**HARTLAND COMPUTER LEASING CORPORATION, INC., Appellant,**

v.

**The INSURANCE MAN, INC., Thomas J. Saulsberry and Jo Ann Reese, Respondents.**

No. 54392.

Missouri Court of Appeals, Eastern District, Division Five.

May 23, 1989.

Sean Patrick O'Gorman, St. Louis, for appellant.

Thomas C. Saulsberry, Northwoods, pro se.

Jo Ann Reese, St. Louis, pro se.

CARL R. GAERTNER, Judge.

Appellant initiated this action in an Associate Judge Division of the Circuit Court of the City of St. Louis after respondents allegedly defaulted on an equipment lease by failing to make monthly payments for the computer equipment they leased from appellant. The trial court, without issuing findings of fact or conclusions of law, summarily denied the petition for breach of the lease after apparently concluding that the lease was a contract of adhesion. We reverse and remand.

Respondent The Insurance Man, Inc., (Insurance Man) as lessee contracted with appellant as lessor for certain computer equipment. Respondent Thomas Saulsberry is the sole owner of Insurance Man. Saulsberry and respondent Jo Ann Reese signed the lease individually as guarantors. Under the terms of the lease, Insurance Man was to select computer equipment carried by vendor Multitask, Inc., which appellant would purchase and in turn lease to respondent. Insurance Man was to make monthly payments of $229.16 to lease the equipment for a term of 36 months beginning July 1, 1986. The lease required an initial payment for the first and last months. On the front of the lease under the caption "Terms and Conditions of Lease" appeared the following provisions: 1) as between lessor and lessee the lessor makes no express or implied warranties of the condition, merchantability or fitness for any particular purpose and that the equipment was "as is", and 2) regardless of the condition or operability of the equipment lessee was to make the monthly payments to lessor and should make all claims solely against vendor. The back of the lease contained default provisions, specifically that in the event of nonpayment of any installment of rent lessor was entitled to terminate the lease, sell or rerent the equipment and recover damages for the balance due under the lease, less the amount recovered by the selling or rerenting. It also provided that lessor was entitled to recover from lessee costs and attorney fees incurred in enforcing the lease.

Thomas Saulsberry testified that the equipment worked for a short time, but malfunctioned during an electrical storm. Upon contacting lessor's agent, James Hogan, Saulsberry was told to take the equipment to the vendor. He did so and repairs were made under the vendor's warranty which was expressly assigned by the purchaser-lessor to the lessee under the terms of the lease. A second malfunction (apparently caused by a blown internal fuse) occurred approximately 20 days later. Saulsberry again contacted Hogan and was again told that the vendor was responsible for maintenance. Saulsberry, however, told Hogan to pick up the equipment and ceased making the monthly payments. The equipment sat idle for six months. When continued efforts to obtain payment of the monthly rental were unsuccessful, Hogan did take possession of the equipment. He later advised Saulsberry the equipment had been repaired and offered to return it. Saulsberry's response to this offer was

that he did not want the machine. He directed Hogan to sell it and then they would make arrangements to settle the difference.

This litigation ensued with appellant seeking damages for breach of the lease. Respondents appeared unrepresented by counsel[1]. From the summary of the evidence set forth above it is obvious there exists no dispute over the execution or the terms of the lease and the guarantee. Respondents' sole defense is, in effect, a claimed breach of the implied warranty of merchantability.[2] Although the parties did not request findings of fact or conclusions of law, the trial court stated at the conclusion of the evidence, "I am not sure what the law of these adhesion contracts are as to this kind of a relationship where one party is the beneficiary of the lease and the other party bears all the liabilities for it not functioning ... I would have a very difficult time in good conscience to ... award all the money that you are asking for."

Apparently the trial court concluded that, because he found it to be a contract of adhesion he was free to disregard appellant's clear and unambiguous express disclaimer of all warranties. This conclusion, under the circumstances of this case, is a misapplication of the law and requires reversal. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a "take this or nothing basis," the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. *Robin v. Blue Cross Hospital Service, Inc.*, 637 S.W.2d 695, 697 (Mo. banc 1982). Some writers view any pre-printed standardized form with filled-in blank spaces to be a contract of adhesion insofar as the pre-printed provisions are concerned. Thus, in *Corbin On Contracts*, § 559A at 660 (Supp.1989), it is said "the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts...." *See also Estrin Construction Co., Inc. v. Aetna Casualty and Surety Co.*, 612 S.W.2d 413, 418, n. 3 (Mo. App.1981). Such form contracts are a natural concomitant of our mass production-mass consumer society. *Id.* Therefore, a rule automatically invalidating adhesion contracts would be completely unworkable. *Corbin, supra* § 559A at 660. Accordingly, courts do not view adhesion contracts as inherently sinister and automatically unenforceable. Rather, as with all contracts, the courts seek to enforce the reasonable expectations of the parties garnered not only from the words of a standardized form imposed by its proponent, but from the totality of the circumstances surrounding the transaction. *Robin, supra*, 637 S.W.2d at 697; *Estrin, supra*, 612 S.W.2d at 413; *Spychalski v. MFA Life Ins. Co.*, 620 S.W.2d 388, 392–93 (Mo.App.1981). Only such provisions of the standardized form which fail to comport with such reasonable expectations and which are unexpected and unconscionably unfair are held to be unenforceable. *Corbin, supra*, § 559A at 660. Because standardized contracts address the mass of users, the test for "reasonable expectations" is objective, addressed to the average member of the

---

1. At the onset of trial proceedings, the court noted on the record, "[T]he defendants Thomas C. Saulsberry and Jo Ann Reese are present here in court appearing pro se without attorney. And I assume, Mr. Saulsberry, that you are representing the interests of the Insurance Man Incorporated also?" A corporation is required to have representation by counsel in any court proceeding. *Credit Card Corp. v. Jackson County Water Co.*, 688 S.W.2d 809, 811 (Mo.App. 1985); *Dobbs Houses, Inc. v. Brooks*, 641 S.W.2d 441, 443 (Mo.App.1982). However, appellant at no time objected to the absence of representation for Insurance Man. Also, Saulsberry, the sole owner of Insurance Man, signed the agreement as a guarantor in his individual capacity. None of appellant's points are raised solely against Insurance Man. We will overlook this procedural defect because the legal principles involved in this case have equal application to the individual as well as the corporate defendants.

2. Appellant contends respondents are not entitled to raise an unpleaded affirmative defense. However, the evidence was received without objection in the trial court and, pursuant to Rule 55.33(b), the issue must be treated as though raised in the pleadings.

public who accepts such a contract, not the subjective expectations of an individual adherent. *Estrin, supra,* 612 S.W.2d at 419–20.

■ We look then to all the evidence surrounding this transaction to determine the objectively reasonable expectations of the parties and to the question of unconscionable unfairness imposed upon respondents under the terms of the form contract. We note first that Saulsberry was engaged in the operation of an insurance agency, presumably accustomed to form contracts. The contract at issue is clearly a lease of computer equipment for a term of years. It contains no option to purchase and requires that the equipment be returned to the lessor at the expiration of the term. Indeed, despite Mr. Saulsberry's references at trial to Mr. Hogan as the salesman, Saulsberry's own testimony was that he contacted Multitask, Inc., the vendor, and was referred to "Hartland Computer Leasing about *leasing* a computer system for my business". The lease provides and the evidence shows that, in fact, the equipment Saulsberry selected was purchased by Hartland from Multitask, and delivered to Saulsberry. The lease contains an assignment by Hartland of all warranties by the manufacturer and seller to Saulsberry. At the time of the first malfunction of the equipment Saulsberry exercised his rights under this assignment and took the equipment to the vendor where it was repaired under the warranty. His refusal to follow the same procedure at the time of the second malfunction, explainable perhaps as exasperation, does not indicate an objectively reasonable expectation that the lessor was obligated under any implied warranty of merchantability or of fitness.

This assignment of warranties did not leave Saulsberry without a remedy, thus militating against any finding of oppressive unconscionability. In *Funding Systems Leasing Corp. v. King Louie International, Inc.,* 597 S.W.2d 624, 634 (Mo.App.1979) a claim of unconscionability in an equipment lease by reason of the disclaimer by a lessor of all warranty obligations was rejected in view of the preservation of the lessee's rights against the seller of the equipment. The facts in *Funding Systems* differ somewhat from the facts in the instant case in that *Funding Systems* involved a three party transaction with a direct sale from a vendor to a purchaser-lessor with financing advanced by a lessor who took title to the equipment as a security device, whereas here we have a two-party lease with no option to purchase. Nevertheless, the issue of unconscionability of the disclaimer of warranties by the lessor is identical to that issue in this case. We agree with the conclusion reached by the majority in *Funding Systems:* The retention of full warranty rights against the seller prevents the disclaimer of warranty obligations by the financing lessor from being unconscionable.

Much as we may wish to sympathize with the unrepresented respondents, we cannot escape the fact that it was the equipment, not the terms of the contract, which failed to live up to respondents' expectations. They possessed the right to seek full and complete relief under the express and implied warranties made by the vendor. The fact is they sought relief from the wrong party.

The trial court did not address the issue of appellant's damages and the record regarding this issue is both confusing and incomplete. In the petition appellant alleged respondents were entitled to an offset in the sum $1,820, the net proceeds of a private sale of the equipment. At trial Mr. Hogan testified that he had been unsuccessful in attempting to sell the equipment. Mr. Saulsberry testified Hogan said he had a buyer who would pay $4,300 to which Saulsberry replied, "[S]ell it. We can agree once you sell it for $4300 dollars or make an arrangement to settle the difference." Although Saulsberry's testimony further demonstrates his understanding of the terms of the contract, it fails to shed any light upon the amount, if any, of the deficiency. Furthermore, the lease provides for the giving of five days notice to the lessee of a private sale of the repossessed equipment. The record is silent with regard to any such notice. For the effect of a failure to give notice of a pri-

vate sale, see *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862 (Mo.App.1978).

Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

PUDLOWSKI, C.J., and SIMEONE, J., concur.