John M. SWAIN, Respondent,

v.

AUTO SERVICES, INC., Appellant.

No. ED 82788.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 9, 2003.

Application for Transfer to Supreme Court Denied Feb. 11, 2004.

Application for Transfer Denied March 30, 2004.

Dennis K. Hoffert, St. Louis, MO, for appellant.

Mitchell B. Stoddard, St. Louis, MO, for respondent.

## *OPINION*

GLENN A. NORTON, Presiding Judge.

Auto Services, Inc. appeals the judgment denying its motion to stay proceedings brought against it in circuit court by John Swain and compel arbitration in Arkansas. We reverse and remand.

## I. BACKGROUND

Swain, a Missouri resident, bought an automobile from a dealership in Missouri. Through the dealership, Swain also purchased a vehicle service plan from Auto Services, an Arkansas corporation. After Auto Services refused to pay for repairs to the car, Swain filed a petition in St. Louis County circuit court, alleging that Auto Services violated state and federal statutes and breached the service plan. Auto Services moved to stay the proceedings and compel arbitration in accordance with the service plan's arbitration clause, which is set out on the last page of the contract:

### *ARBITRATION*

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be finally settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, unless the parties mutually agree otherwise, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

- **Venue:** The arbitration shall be conducted by a single arbitrator in Baxter County, Arkansas. The parties consent to the jurisdiction of the state and federal courts of Arkansas to specifically enforce the Agreement to arbitrate and to enter judgment of and enforce the award of the arbitrator.
- **Discovery:** The parties elect to provide for pre-arbitration disco very pursuant to the provisions of the Ark.Code. Ann. [section] 16–108–207. The provisions of Ark.Code Ann. [section] 16–108–207 governing witnesses, subpoenas, depositions, and fees are hereby incorporated into and made a part of this Agreement.

- **Costs:** Each party will pay the fees of its own attorneys, expenses or witnesses and all other expenses connected with the presentation of such party's case. The cost of arbitration and the fees of the arbitrator will be shared equally by the parties.
- **No Punitive Damages:** The arbitrator will not have the authority to award punitive damages in any arbitration proceedings hereunder.

Swain challenged the enforceability of the arbitration clause on the grounds that it was adhesive, unconscionable and contrary to public policy. He filed an affidavit in support, in which he stated that the dealership representative informed him there was no warranty available for the car that he bought, only Auto Services' service plan. Swain attested that the dealership filled the plan out for him, did not offer him the chance to read it and did not discuss any terms of the plan with Swain (other than length of coverage) before asking him to sign it. He was not shown the arbitration clause, did not see it and was not aware of it when he signed the plan. Swain also asserted that the dealership never indicated that any terms of the service plan (other than length of coverage) were negotiable.

The court denied Auto Services' motion, finding that requiring arbitration in Arkansas would be onerous and tend to deprive meaningful redress of Swain's claims.

## II. DISCUSSION

On appeal, Auto Services argues that the court erred by refusing to compel arbitration because the arbitration clause unambiguously covers Swain's claim and must be enforced under the Federal Arbitration Act, 9 U.S.C. section 2 (1999), the Missouri Arbitration Act, section 435.350 RSMo 2000,[1] and public policy. Auto Services also contends that the court erred by refusing to enforce the parties' selection of Arkansas as the venue for arbitration because Swain failed to prove that selection of that forum is unjust or unreasonable. Swain responds that the arbitration clause is unconscionable, and therefore unenforceable, because it prohibits him from recovering attorney fees, expenses, cost, or punitive damages while Auto Services gives up nothing. He also contends that selection of Arkansas as the venue for arbitration is unfair because this is a contract of adhesion and unreasonable because it defeats the purpose of having a Missouri court decide his Missouri statutory claim.

It is undisputed that the arbitration clause covers Swain's claims, and we agree that it must be enforced. But we will not enforce the provision requiring that arbitration occur in Arkansas.

■■■ Because the contracting parties in this case reside in different states, this agreement relates to interstate commerce within the meaning of the Federal Arbitration Act ("FAA"). 9 U.S.C. section 2; *see also Duggan v. Zip Mail Services, Inc.*, 920 S.W.2d 200, 202 (Mo.App. E.D.1996). Therefore, with or without the Missouri Arbitration Act, Swain could be compelled to arbitrate in accordance with the federal law.[2] *See Bunge Corporation v. Perryville*

---

1. All statutory references are either to U.S.C. (1999) or RSMo 2000.

2. In fact, application of the Missouri Act to this contract would likely defeat arbitration because the service plan does not include the required 10–point capital letter notice of the arbitration clause above the signature line and because, as discussed herein, this is a contract of adhesion. *See* section 435.460 and section 435.350. The Missouri Act cannot be applied to circumvent an arbitration provision that falls within the scope of the

*Feed & Produce, Inc.*, 685 S.W.2d 837, 838–39 (Mo. banc 1985).

By enacting the FAA, Congress reversed "longstanding judicial hostility" toward arbitration agreements and adopted a liberal policy favoring enforcement thereof. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. section 2. Thus, if a court determines by ordinary rules of contract interpretation that a valid agreement to arbitrate exists and that the dispute falls within the scope of that agreement, then arbitration must be compelled. *Dunn Industrial Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427–28 (Mo. banc 2003). Nevertheless, generally applicable state law contract defenses, such as fraud, duress and unconscionability, may be used to invalidate arbitration agreements without contravening the FAA. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

Swain contends that this agreement to arbitrate is an unconscionable contract of adhesion. "In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a 'take this or nothing basis,' the terms of which unexpectedly or unconscionably limit the obligations of the drafting party." *Hartland Computer Leasing Corp., Inc. v. Insurance Man, Inc.*, 770 S.W.2d 525, 527 (Mo.App. E.D.1989). Adhesion contracts usually involve the unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts. *See High Life Sales Company v. Brown–Forman Corp.*, 823 S.W.2d 493, 497 (Mo. banc 1992). But they are not "inherently sinister and automatically unenforceable." *Hartland Computer*, 770 S.W.2d at 527. Because the bulk of contracts signed in this country are form contracts—"a natural concomitant of our mass production-mass consumer society"—any rule automatically invalidating adhesion contracts would be "completely unworkable." *Id.* Rather, our courts seek to enforce the reasonable expectations of the parties. *Id.* Only those provisions that fail to comport with those reasonable expectations and are unexpected and unconscionably unfair are unenforceable. *Id.* at 528. "Because standardized contracts address the mass of users, the test for 'reasonable expectations' is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent." *Id.*

The agreement to arbitrate in this service plan clearly is an adhesive contract. Swain is an individual consumer, and Auto Services is a corporation—bargaining power was unequal. The service plan was presented as the only warranty available on the car in a mostly pre-printed form, and, other than the length of service, none of the terms were negotiable. The arbitration clause was not discussed with Swain before he was asked to sign the agreement.

As to the agreement to arbitrate generally, however, we find that an average person would reasonably expect

FAA. *Duggan*, 920 S.W.2d at 203; *see also generally Bunge*, 685 S.W.2d at 839. Application of the Missouri Act is, therefore, preempted by the FAA. *See Duggan*, 920 S.W.2d at 203 (citing *Southland Corporation v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).

that disputes arising out of an agreement like this might have to be resolved in arbitration. An agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair. It is not an agreement "such as no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other, . . ." *Hume v. United States,* 132 U.S. 406, 415, 10 S.Ct. 134, 33 L.Ed. 393 (1889) (defining unconscionable contract). Nor does requiring arbitration present "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it" or constitute an unduly harsh term of the contract. *State, Missouri Department of Social Services, Division of Aging v. Brookside Nursing Center, Inc.,* 50 S.W.3d 273, 277 (Mo. banc 2001) (citing the Restatement (Second) of Contracts and the Uniform Commercial Code definitions of "unconscionability").

▬▬▬ On the other hand, the selection of Arkansas as the venue for arbitration is unexpected and unconscionably unfair. An average consumer purchasing a car in Missouri would not reasonably expect that any disputes arising under the service plan accompanying the car would have to be resolved in another state. *See Hartland Computer,* 770 S.W.2d at 528. Our courts will not enforce clauses selecting a forum outside Missouri that are unfair or unreasonable. *See High Life,* 823 S.W.2d at 497. Again, the adhesive nature of this clause—as sufficiently proven by both the service plan itself and Swain's affidavit—renders it unfair. It is unconscionably unfair because it limits Auto Service's obligations and is, on its face, comparatively harsh on any consumer outside of Arkansas. *See id.; see also Hartland,* 770 S.W.2d at 527. Unlike a clause providing for venue in *the defendant's* home state—which the Supreme Court prefers

because when either party initiates proceedings it "puts the lawsuit in the opponent's backyard"—this clause puts the resolution of all disputes in the corporation's backyard. *High Life,* 823 S.W.2d at 497; *see also Burke v. Goodman,* 114 S.W.3d 276, 280 (Mo.App. E.D.2003). Arkansas, therefore, is not a neutral or reciprocal site, and the clause selecting that state as the venue for all arbitrations is unfair. We will not enforce it.

▬▬▬ The unenforceability of the venue provision, however, does not render the entire arbitration agreement invalid. If an unenforceable term is not essential to the entire agreement, then the rest of the agreement may be enforced. *See generally* RESTATEMENT (SECOND) OF CONTRACTS section 183, comment c *and* section 184, comment a (1979). Whether a contract is severable in this manner depends on the circumstances of the case and is largely a question of the parties' intent. *Shelbina Veterinary Clinic v. Holthaus,* 892 S.W.2d 803, 806 (Mo.App. E.D.1995); *McKnight v. Midwest Eye Institute of Kansas City, Inc.,* 799 S.W.2d 909, 918 (Mo.App. W.D. 1990).

Here, the venue provision stands apart from the general agreement to arbitrate found in the opening paragraph of the clause. The parties agreed in the opening paragraph to arbitrate under the American Arbitration Association's Rules for Commercial Arbitration, which provide a method for fixing the locale of the arbitration. *See* Rule 10, Commercial Arbitration Rules and Mediation Procedures. Thus, the venue provision is not essential to enforcement of the rest of the arbitration clause, as it is certainly possible to conduct an arbitration in some place other than Arkansas. To invalidate the entire clause on the basis of an unfair arbitration location would, in this case, undermine the liberal federal policy favoring arbitration agreements.

Swain also asserts that the arbitration clause in this case is unconscionable because it limits remedies that would otherwise be available if he prevailed on his Missouri Merchandising Practices Act and federal Magnuson–Moss Warranty Act claims.[3] Some federal circuit courts have held that whether remedial limits in an arbitration clause are invalid or unconscionable is a question for the arbitrator, while others have found that a court may determine the enforceability of an arbitration clause with remedial limitations. *See Anders v. Hometown Mortgage Services, Inc.*, 346 F.3d 1024, 1029–31 (11th Cir. 2003) (collecting cases); *see also Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 725–27 (8th Cir.2003). The Supreme Court recently had this issue before it, but did not reach it. *See PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, ——, 123 S.Ct. 1531, 1533, 155 L.Ed.2d 578 (2003).[4] We need not decide which is the better approach because the remedial restrictions here— like the venue provision—are severable from the rest of the arbitration clause. The remedy provisions stand alone, separate from the opening paragraph of the arbitration clause, and are not essential to the remainder of the clause. Thus, even if an arbitrator or the court found them invalid, these provisions do not impact the enforceability of the agreement to arbitrate.

In sum, the agreement to arbitrate is not unconscionable, but requiring arbitration in Arkansas is. Because the unenforceable venue provision is severable from the general agreement to arbitrate, the agreement to arbitrate is enforceable.

On remand, the court may consider whether the existence of large arbitration costs—half of which Swain must pay under the "fee-sharing" provision in this arbitration clause—effectively precludes Swain from pursuing his claims and renders the agreement to arbitrate invalid under *Green Tree Financial Corporation—Alabama v. Randolph*, 531 U.S. 79, 90–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) and cases decided thereunder. We do not reach that issue ourselves because the parties have not yet had the opportunity to conduct discovery to determine whether the costs of arbitration are, in fact, prohibitively expensive in this case—especially in light of our holding that the arbitration need not occur in Arkansas.

### III.  CONCLUSION

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

KATHIANNE KNAUP CRANE, J. and MARY K. HOFF, J. concurring.

---

3.  Under the Merchandising Act, Swain may be entitled to punitive damages and attorney fees at the court's discretion. Section 407.025.1. Likewise, under the Magnuson–Moss Warranty Act, he could be entitled to "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended)." 15 U.S.C. section 2310(d)(2).

4.  The Court did note, however, that "the preliminary question" of whether the remedial limitations at issue prohibit the arbitrator from awarding statutory remedies is not a question of arbitrability for the court, but one for the arbitrator to decide in the first instance. *PacifiCare*, 123 S.Ct. at 1536 n. 2. Because it was not clear how the arbitrator would interpret the remedial provisions in that case, the Court found it premature to decide whether a court or an arbitrator should decide if, as construed by the arbitrator, the remedial provisions render the parties' agreements unenforceable. *Id.* at 1535–36.