Dale LAWRENCE, Respondent,

v.

BEVERLY MANOR, Appellant.

No. SC 89291.

Supreme Court of Missouri, En Banc.

Jan. 13, 2009.

Jon W. Jordan, Stephen M. Strum, Thais Ann Folta, Sandberg, Phoenix & von Gontard, St. Louis, for Appellant.

Tim E. Dollar, Dollar Burns & Becker, L.C., Kansas City, Phillip A. Burdick, Burdick Law Offices, P.C., St. Joseph, for Respondent.

Leland F. Dempsey, Ashley L. Baird, Dempsey & Kingsland, P.C., Kansas City, Amicus Curiae, Missouri Association of Trial Attorneys.

David L. Schenberg, Mark G. Arnold, Harvey M. Tettlebaum, St. Louis, Amicus Curiae, Missouri Chamber of Commerce & Industry.

## Issue Presented

MICHAEL A. WOLFF, Judge.

Does an arbitration agreement signed by or on behalf of a nursing home resident bind the plaintiffs in a wrongful death action against the nursing home for the resident's death?

The circuit court held that wrongful death claimants were not bound by the agreement and could bring a court action for their relative's wrongful death. The circuit court's judgment is affirmed.

## Facts

Dorothy Lawrence took up residence at Beverly Manor in March 2003. Phyllis Skoglund, Dorothy Lawrence's daughter, signed an arbitration agreement stating:

It is understood and agreed by [Beverly Manor] and [Dorothy Lawrence] that any and all claims, disputes and controversies ... arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by [Beverly Manor] to [Dorothy Lawrence] shall be resolved exclusively by binding arbitration[.]

It is the intention of the parties to this Arbitration Agreement that it shall inure to the benefit of and bind the parties, their successors, and assigns, including without limitation the agents, employees and servants of [Beverly Manor], and all persons whose claim is derived through or on behalf of [Dorothy Lawrence], including any parent, spouse, sibling, child, guardian, executor, legal representative, administrator or heirs of [Dorothy Lawrence]. The parties further intend that this agreement is to survive the lives or existence of the parties hereto.

The agreement compels arbitration for any claims Dorothy Lawrence may have against Beverly Manor and any claim "derived through" her claims. Skoglund signed the arbitration agreement on behalf of her mother, acting in her capacity as her mother's agent under a power of attorney made in 1992.

Shortly after being admitted to Beverly Manor, Dorothy Lawrence died. Her son, Dale Lawrence, filed a petition against Beverly Manor under the wrongful death statute, section 537.080.[1] Lawrence claimed that his mother died as a result of injuries incurred when Beverly Manor employees dropped her. Beverly Manor filed a motion in the circuit court to compel arbitration. The circuit court overruled Beverly Manor's motion, reasoning that "the decedent's daughter was an agent for

---

1. All statutory references are to RSMo 2000.

the purpose of securing residential treatment for the decedent during her lifetime, [and] nothing in the arbitration agreement can be construed to extend to new and independent causes of action. . . ." The circuit court held, therefore, that Ms. Lawrence "could not bind or limit any person who had a right of action arising by reason of her death at some point in the future."

Beverly Manor appealed.[2] After opinion in the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

### Does the arbitration agreement signed by the decedent bind the parties in a wrongful death suit?

■ An appellate court's review of a trial court's denial of a motion to compel arbitration is *de novo*. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003). Before compelling parties to arbitrate, the circuit court must determine whether the arbitration agreement bound the parties to the wrongful death suit. *Finney v. Nat'l Healthcare Corp.*, 193 S.W.3d 393, 395 (Mo.App.2006). The parties do not dispute the fact that if Dorothy Lawrence were alive, she would be bound by the arbitration agreement. They also do not dispute that if Dale Lawrence's claim is derived through his mother's claim, he too would be bound by the agreement. The relevant question, then, becomes whether a suit for wrongful death can be considered derivative of any underlying tort claims that could have been brought by the deceased.

■ The wrongful death statute under which Lawrence brings his claim, section 537.080, provides that:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured[.]

"The wrongful death act creates a *new cause of action* where none existed at common law and did not revive a cause of action belonging to the deceased," this Court held in *O'Grady v. Brown*, 654 S.W.2d 904, 910 (Mo. banc 1983) (emphasis added). "The right of action thus created is neither a transmitted right nor a survival right." *Id.*

This Court upheld the view that wrongful death is a cause of action distinct from any underlying tort claims in both *Sullivan v. Carlisle*, 851 S.W.2d 510, 514–15 (Mo. banc 1993), and *American Family Mutual Insurance Company v. Ward*, 774 S.W.2d 135, 136–37 (Mo. banc 1989).[3] In *Finney*, the court of appeals followed *O'Grady*, holding that "[t]he wrongful death claim does not belong to the deceased or even to a decedent's estate." 193 S.W.3d at 395.

---

**2.** This Court recognizes the appealability of orders denying arbitration despite the fact that such orders are not final judgments, under the influence, if not the command of provisions of the Federal Arbitration Act and the Missouri Uniform Arbitration Act relating to appealability of such orders, 9 U.S.C. sec. 16(a)(1)(B) and sec. 435.440.1, respectively. *See Triarch Industries, Inc. v. Crabtree*, 158 S.W.3d 772, 774 (Mo. banc 2005).

**3.** For a discussion of the history of the wrongful death cause of action, *see* Comment, *The Missouri Wrongful Death Statute*, 1963 WASH. U.L.Q. 125 (1963); Frederick Davis, *Wrongful Death*, 1973 WASH. U.L.Q. 327 (1973). *See also State ex rel. Jewish Hospital of St. Louis v. Buder*, 540 S.W.2d 100, 104 (Mo.App.1976) (discussing the governing principles of wrongful death).

*Finney* was factually similar to the present case. Jane Franano was admitted to a nursing home, and her granddaughter signed an arbitration agreement on behalf of Franano. *Id.* at 394. After Franano died, her daughter, Jan Finney, brought a wrongful death claim against the nursing home. *Id.* The nursing home moved to compel arbitration, and the court of appeals held that because the wrongful death claim was a separate claim that could not have been brought by the decedent, the arbitration agreement did not apply to the daughter's wrongful death suit. *Id.* at 395. *Finney's* reasoning is both consistent with this Court's precedent and applicable to the present case. The wrongful death statute and the precedent cases clearly consider wrongful death to be a cause of action separate and distinct from the underlying tort.

Beverly Manor argues, however, that this Court's decision in a venue case, *State ex rel. Burns v. Whittington*, 219 S.W.3d 224 (Mo. banc 2007), undercuts the cases that hold wrongful death to be a separate cause of action. In *Burns*, the original plaintiff filed a negligence suit in St. Louis City, claiming that exposure in St. Louis County to benzene products had given him leukemia. After the negligence suit was filed, the legislature amended the venue statutes, providing that venue was located where the "injury first occurred." *See* section 538.305, RSMo Supp.2007. The new venue statute applied only to cases filed after the date of the amendment. *Id.* After the venue statute was amended, the original *Burns* plaintiff died. His son then filed an amended petition alleging wrongful death. The defendants moved for transfer to St. Louis County, arguing that the wrongful death petition constituted a new cause of action falling under the new venue statute. Construing the venue statute, this Court held that *for purposes of establishing venue*, the "[wrongful death]

cause of action is derivative of the underlying tortious acts that caused the fatal injury," and that therefore, the wrongful death suit did not constitute a new cause of action. *Burns*, 219 S.W.3d at 225.

This Court's decision in *Burns* is consistent with the venue statutes, which, as construed, prevent venue from being manipulated by the parties away from the place for trial designated in the appropriate venue statute. Although the language of *Burns* may seem to create ambiguity as to whether wrongful death should be considered a derivative cause of action, the *Burns* holding is limited to the issue of venue.

There is nothing in the venue statute that purports to amend the wrongful death statute or to overturn this Court's precedents construing the wrongful death statute. Similarly, *Burns* does not overturn this Court's precedent holding that, substantively, wrongful death is a cause of action separate from underlying torts. In *Burns*, because the defendant's treatment of the deceased was the basis for both the original negligence suit and the wrongful death suit, for purposes of venue there was no difference, as both had the same connection to the original venue. *Burns* dealt with whether the subsequent wrongful death suit has a sufficient tie to the original venue, whereas in the present case, the question is whether one is bound by another's agreement to which one was not a party. The different issues necessitate different analyses.

■ As the court noted in *Finney*, not only are the parties who may bring wrongful death distinct from those who may bring a suit for an underlying tort, but the measure of damages is also different. *See Finney v. Nat'l Healthcare Corp.*, 193 S.W.3d at 395. ("The damages under section 537.080 are different than the dam-

ages Decedent would have been entitled to in a personal injury action against Appellants. Under Missouri's wrongful death statute, the party or parties may receive 'pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death.' Section 537.090.").[4] Wrongful death, therefore, is a cause of action separate from the underlying torts, although it is treated differently for the purposes of venue.

The arbitration agreement applies only to "all persons whose claim is derived through or on behalf of [Dorothy Lawrence]." Dorothy Lawrence could not be a party to the wrongful death suit resulting from her death. A claim for wrongful death is not derivative from any claims Dorothy Lawrence might have had, and the damages are not awarded to the wrongful death plaintiffs on Dorothy Lawrence's behalf.

The arbitration agreement, therefore, cannot bind parties to the wrongful death suit. Dale Lawrence, as the plaintiff in the wrongful death action, is not bound by the arbitration agreement signed by Dorothy Lawrence.

**Did the agreement bind Phyllis Skoglund in her individual capacity or in her capacity as a member of the class of wrongful death plaintiffs?**

■ In the alternative, Beverly Manor argues that pursuant to the mandate of section 537.080.2 that "[o]nly one [wrongful death] action may be brought under this section against any one defendant for the death of any one person," Phyllis Skoglund and Dale Lawrence are in the class of persons who may bring a single wrongful death action. Beverly Manor asserts that because Skoglund signed the arbitration agreement on behalf of Dorothy Lawrence, and because Skoglund and Dale Lawrence could bring only one wrongful death suit, Dale Lawrence must be bound by Skoglund's agreement to arbitrate the claim.

This reasoning requires this Court to find that by signing on behalf of her mother, Skoglund also was signing on her own behalf and on behalf of the wrongful death plaintiffs. Skoglund, however, signed pursuant to the power of attorney she had been given. *See* section 404.705. She did not sign the agreement in her individual capacity. Nor did she purport to sign as a representative of the class of potential wrongful death beneficiaries, even assuming she could have done so. *But see, Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Skoglund's only signature to the agreement is in her capacity as her mother's agent. The arbitration agreement does not bind Skoglund and does not bind the class of wrongful death plaintiffs. *See Nitro Distrib., Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006) ("To be bound as a third-party beneficiary, the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member.").

---

4. The wrongful death statute also provides that the "trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued." Section 537.090. However, these potential damages do not render wrongful death a derivative claim, nor would such damages be awarded to the plaintiffs on Dorothy Lawrence's behalf.

Neither Phyllis Skoglund nor Dale Lawrence, in their capacity as members of the class of wrongful death plaintiffs, is bound by the arbitration agreement.

This Court affirms the judgment of the trial court.

STITH, C.J., PRICE, TEITELMAN and RUSSELL, JJ., and DANIELS, Sp.J., concur. NORTON, Sp.J., concurs in separate opinion filed. TEITELMAN, J., concurs in opinion of NORTON, Sp.J., BRECKENRIDGE and FISCHER, JJ., not participating.

## CONCURRING OPINION

GLENN A. NORTON, Special Judge.

I concur in the result of the majority opinion, but write separately to address concerns over the enforceability of certain provisions found in an arbitration agreement that is executed in connection with a resident's admission to a nursing home. I would hold that provisions requiring a resident and nursing home to arbitrate any personal injury claims,[1] and requiring them to waive their right to have any such claims decided in a court of law, are unenforceable because they are procedurally and substantively unconscionable.[2]

### A. Background

The underlying case involves provisions in a form arbitration agreement between Beverly Manor ("the Nursing Home") and Dorothy Lawrence ("Resident") executed by Resident's daughter, who was acting as Resident's attorney-in-fact. The first two sentences in the arbitration agreement indicate that its execution was connected to Resident's admission to the Nursing Home. The first sentence states the agreement was executed by the parties "*in conjunction with* an agreement for admission and for the provision of nursing facility services" (emphasis added). The second sentence states that, upon execution, the arbitration agreement "*becomes part* of the Admission Agreement" (emphasis added).

The arbitration agreement between the Nursing Home and Resident provides that "any and all claims, disputes, and controversies ... arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the [Nursing Home] to the Resident shall be resolved exclusively by binding arbitration" and "not by a lawsuit or resort to court process." The agreement further states:

This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the [Nursing Home], violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement.

The arbitration agreement also contains a provision stating that, by entering into the

1. For purposes of this opinion, "any personal injury claims" include claims brought by the parties' successors and assigns.

2. The issue of whether provisions in the arbitration agreement are unconscionable was disputed in briefs filed in this Court and was addressed in oral argument before this Court. Specifically, the issue was raised in an amicus brief, addressed in Appellant Beverly Manor's reply brief, and addressed at oral argument.

agreement, "the parties are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury, as well as any appeal from a decision or award of damages."

Resident died shortly after her admittance to the Nursing Home. Thereafter, Resident's son filed a two-count wrongful death petition against the Nursing Home, alleging that his mother suffered fatal injuries to her head when the Nursing Home's employees negligently dropped her. The Nursing Home filed a motion to compel arbitration of Resident's son's wrongful death claim, which the trial court denied.

## B. Standard of Review

Whether a motion to compel arbitration should have been granted is a question of law that the Court reviews de novo. *Arrowhead Contracting, Inc. v. M.H. Washington, LLC,* 243 S.W.3d 532, 535 (Mo. App.2008). In reviewing the motion to compel, a court must determine whether a valid arbitration agreement exists and, if so, whether a specific dispute falls within the scope of the arbitration agreement. *Id.*

## C. Relevant Law

There is no dispute by the parties that the arbitration agreement in this case is governed by the Federal Arbitration Act ("the FAA"). The FAA provides that an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. section 2 (2008). Accordingly, if a court determines by ordinary rules of contract interpretation that a valid arbitration agreement exists and that the dispute falls within the scope of that agreement, then arbitration must be compelled. *Swain v. Auto Services, Inc.,* 128 S.W.3d 103, 107 (Mo.App.2003). "Nevertheless, generally

applicable state law contract defenses, such as fraud, duress and unconscionability, may be used to invalidate arbitration agreements without contravening the FAA." *Id.* (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). The purpose of allowing applicable state law contract defenses to invalidate an arbitration agreement is to protect consumers against unfair pressure to agree to unwanted arbitration. *See Whitney v. Alltel Communications, Inc.,* 173 S.W.3d 300, 310 (Mo. App.2005) (noting that section 9 U.S.C. section 2 "gives States a method of protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision") (quoting *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753(1995)).

An unconscionable arbitration provision in a contract will not be enforced. *See State ex rel. Vincent v. Schneider,* 194 S.W.3d 853, 856–61 (Mo. banc 2006) (invalidating as unconscionable arbitration clauses requiring the consumer to pay for all arbitration fees and allowing an entity related to one of the parties to select the arbitrator); *Whitney,* 173 S.W.3d at 308–14 (invalidating as unconscionable an arbitration provision barring consumer claims from being raised as class actions); *Swain,* 128 S.W.3d at 105–09 (invalidating as unconscionable an arbitration provision requiring a Missouri consumer to arbitrate in Arkansas).

In general, both procedural and substantive aspects of unconscionability must exist for an arbitration provision to be unenforceable. *Whitney,* 173 S.W.3d at 308. Procedural unconscionability, which relates to the formalities of the making of an agreement, involves, *inter alia,* the high pressure exerted on the parties and unequal bargaining position. *Id.* On the

other hand, substantive unconscionability has been described as "undue harshness in the contract terms themselves." *Id.* (internal quotation omitted).

Procedural and substantive unconscionability both may be found in an adhesion contract. *See id.* at 308–14. An adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party on a weaker party on a "take it or leave it basis," the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. *Swain,* 128 S.W.3d at 107. Adhesion contracts usually involve unequal bargaining power of a large company versus an individual, and are often form contracts. *Id.* "Standing alone, an agreement choosing arbitration over litigation, even between parties of unequal bargaining power, is not unconscionably unfair." *Whitney,* 173 S.W.3d at 310–11 (internal quotation omitted). An agreement requiring arbitration is only unconscionable when an average reasonable person would not reasonably expect, in light of the totality of the circumstances surrounding the transaction, that the dispute might be resolved through arbitration rather than litigation. *Id.* at 311; *Midwest Division–OPRMC, LLC v. Department of Social Services, Division of Medical Services,* 241 S.W.3d 371, 379 (Mo.App. 2007).

**D. The Provisions Requiring the Parties to Arbitrate any Personal Injury Claims, and Requiring them to Waive their Right to Have Any Such Claims Decided in a Court of Law, are Procedurally and Substantively Unconscionable**

In this case, the provisions of the arbitration agreement that require the Nursing Home and Resident to arbitrate any personal injury claims, and require the parties to waive their right to have any such claims decided in a court of law, are both procedurally and substantively unconscionable.

The parties' arbitration agreement is a contract of adhesion. Resident is an individual, and the Nursing Home is a large company—the bargaining power was unequal. The arbitration agreement was presented as a form contract. For the reasons stated below, an average individual seeking nursing home care would not reasonably expect that any personal injury claims arising out of the Nursing Home's care might have to be resolved through arbitration rather than litigation.

The decision whether to place an individual under a nursing home's care is difficult and emotional for all parties involved. In some cases, the individual may be incapacitated or disabled so that he is not able to make the decision for himself and loved ones must decide what is best for their friend or family member. In other cases, the individual and his loved ones must decide together whether it is best for him to enter a less independent lifestyle. But in all cases where the decision to place an individual under a nursing home's care is finally made, those involved in the decision reasonably seek and expect that the individual will receive adequate care from the nursing home.

Similarly, upon a person's admission to the nursing home, an individual and/or his loved ones are focused on and concerned with the ability of the nursing home to begin adequately caring for the resident. And during the admission process and beyond, the reasonable expectation is that the nursing home will provide adequate care for the resident. Thus, a person in the process of becoming a nursing home resident is not in a position to be thinking about how, if adequate care is not provided and personal injury results, the resident

and/or his successors and assigns are going to pursue any future personal injury claims against the nursing home. In particular, the resident is not thinking about whether, by signing a form in conjunction with an admission agreement, he and/or his successors and assigns are waiving their right to have any personal injury claims decided in a court of law. As previously stated, an average individual seeking nursing home care would not reasonably expect that any personal injury claims arising out of the nursing home's care might have to be resolved through arbitration rather than litigation.

While I agree with the majority's ultimate finding that the trial court properly denied the Nursing Home's motion to compel arbitration, I would find that the trial court's decision was proper for a different reason. I would hold that the provisions requiring Resident and the Nursing Home to arbitrate any personal injury claims, and requiring them to waive their right to have any such claims decided in a court of law, are unenforceable because they are procedurally and substantively unconscionable.[3]

---

3. Under Missouri law and the terms of the parties' arbitration agreement, the remaining provisions of the arbitration agreement would remain enforceable, including, but not limited to, provisions requiring the parties to arbitrate claims relating to payment. *See Swain,* 128 S.W.3d at 108 (stating that the unenforceability of one provision of an arbitration agreement does not render the entire arbitration agreement invalid).