In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO
BREANNA ROSE, ) No. ED109193
 )
 Respondent, )
 ) Appeal from the Circuit Court
 ) of St. Louis County
 vs. ) Cause No. 19SL-CC04651
 )
SANTIAGO E. SABALA, JR, ) Honorable Joseph S. Dueker
 )
 Respondent, ) Filed: June 29, 2021
 )
 and )
 )
VERIZON COMMUNICATIONS, INC., )
 )
 Appellant. )

 OPINION

 This is an interlocutory appeal pursuant to § 435.440(1) RSMo.1 Defendant Verizon

Wireless Services, LLC (Verizon) challenges the trial court’s denial of its application to compel

arbitration. Because the arbitration provision was contained in a contract of adhesion that does

not comport with the reasonable expectations of the parties, we affirm.

1
 All statutory references are to RSMo. Cum. Supp. 2020.
 Facts & Procedural Background

 Plaintiff Breanna Rose’s claims relate to an incident occurring on March 7, 2018, when

she entered a Verizon store to exchange her iPhone for a newer model and a store employee

allegedly transferred several images from her phone to his email account without her consent.

According to her petition, the store employee took her phone to the back of the store where he

was researching a value for the phone exchange, Plaintiff believed. Approximately four months

later, Plaintiff discovered that an email had been sent from her account to an email address

associated with the Verizon employee and at a time coinciding with her visit to the Verizon

location. The email included several attached photographs and a video displaying nude and

partially nude images of Plaintiff, as well as a reproduction of Plaintiff nursing an infant. Based

on this, Plaintiff sued both the Verizon employee and Verizon, specifically alleging multiple

claims relating to the March 7 incident.

 Subsequently, Verizon filed its “Motion to Compel Arbitration and to Stay Proceedings,”

arguing that the Plaintiff’s action should be removed from circuit court pursuant to their binding

arbitration agreement. More specifically, Verizon relies on a Verizon store receipt that Plaintiff

signed in September 2015, following an earlier visit to a Verizon store.2 The 2015 store receipt

includes language identifying the Verizon product of purchase, references the “SETTLEMENT

OF DISPUTES BY ARBITRATION INSTEAD OF JURY TRIALS,” and refers to an online

“Customer Agreement” accessible on Verizon’s website.

 According to evidence submitted by Verizon, the Customer Agreement in effect at the

time Plaintiff signed the store receipt was dated July 24, 2015. A separate writing from the store

2
 Although the September 2015 store receipt includes Plaintiff’s signature, the receipt identifies the “customer” as
“KPMG PEAT MARWICK,” not Plaintiff. The record does not indicate the reason for this distinction and the
parties’ briefs do not elaborate on it. For purposes of this decision, we assume that Plaintiff is deemed a party to the
Customer Agreement.

 2
receipt itself, the online July 2015 Customer Agreement states that a customer activating Verizon

services is “agreeing to every provision of this Agreement whether or not [the customer] ha[s]

read it.” The Customer Agreement includes arbitration language on pages seven to nine. Among

other relevant language, it reads:

 ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS
 AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES
 YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH
 PRODUCTS OR SERVICES), INCLUDING ANY DISPUTES YOU HAVE
 WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR
 MORE NEUTRAL ARBITRATORS . . ..
The Customer Agreement further specifies that the “FEDERAL ARBITRATION ACT

APPLIES TO THIS AGREEMENT.” The Customer Agreement also provides that

Verizon “may change prices or any other term of your Service or this agreement at any

time . . ..” Other provisions limit Verizon customers’ rights with respect to disputes over

billing and service interruptions.3

 The trial court denied Verizon’s “Motion to Compel Arbitration and to Stay Proceedings”

on September 9, 2020. When doing so, the court held that the arbitration provision was “both

procedurally and substantively unconscionable, and a contract of adhesion.” Further, the court

held the provision “was not a negotiated contract” and “does not comport with the reasonable

expectations of the parties” because an individual purchasing a new mobile device “would not

reasonably expect that any and all disputes, especially like those regarding the allegations herein,

would have to be resolved by arbitration . . ..”

 Verizon now appeals, requesting the court reverse the trial court’s denial of its Motion to

Compel Arbitration and direct the trial court to enter an order compelling Plaintiff to submit to

3
 The record also contains undisputed evidence that Verizon is a telecommunications company that sells wireless
products and services.

 3
arbitration and stay the litigation. Verizon raises three interrelated points. In Point I, it argues that

the trial court erred in applying the Missouri Uniform Arbitration Act (MUAA), rather than the

Federal Arbitration Act (FAA). In Points II and III, Verizon contends that the arbitration

provision was not unconscionable or a contract of adhesion and met the parties’ reasonable

expectations, contrary to the trial court’s conclusions.

 Standard of Review

 The trial court’s factual determinations regarding the existence of a valid, enforceable

arbitration agreement will be affirmed unless there is no substantial evidence to support it, it is

against the weight of the evidence, or it erroneously declares or applies the law. Brewer v.

Missouri Title Loans, 364 S.W.3d 486, 492 (Mo. banc 2012); see also Theroff v. Dollar Tree

Stores, Inc., 591 S.W.3d 432, 436 (Mo. banc 2020). Where there is no factual dispute or the

question is one of contract interpretation, review is de novo. Theroff, 591 S.W.3d at 436.4

 Discussion

 The FAA provides that arbitration agreements “involving commerce” are enforceable

“save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C.

§§ 1-2. The latter provision is sometimes referred to as the FAA’s “savings clause.” State ex rel.

Hewitt v. Kerr, 461 S.W.3d 798, 806 (Mo. banc 2015). The FAA’s purpose is to place arbitration

agreements on equal footing with other contracts. Buckeye Check Cashing, Inc. v. Cardegna, 546

U.S. 440, 443 (2006). The phrase “involving commerce” is a broad one, and extends the reach of

the FAA to any contract affecting interstate commerce. Bull v. Torbett, 529 S.W.3d 832, 838

(Mo. App. W.D. 2017). Because the present matter involves the sale or transaction of wireless

4
 Unlike some other cases involving the interpretation or enforcement of an arbitration agreement, the present matter
does not include a “delegation provision” directing the arbitrator to determine the issue of arbitrability. Cf. Soars v.
Easter Seals Midwest, 563 S.W.3d 111, 114 (Mo. banc 2018).

 4
telephones and services, interstate commerce is involved and the FAA applies. Accordingly, the

issue is whether the arbitration provision is revocable under any grounds involving a Missouri

contract and as allowed by the FAA’s savings clause.5 In Brewer, 364 S.W.3d at 491-92, the

Missouri Supreme Court recognized that application of state-law contract defenses in connection

with the FAA’s savings clause requires a fact-specific “case-by-case” approach.

 Here, the parties’ arguments focus on two issues: (1) whether the contract was

unconscionable, and (2) whether it was an unenforceable contract of adhesion. As a matter of

Missouri law, either of these is a reason to revoke or decline to enforce “any contract,” and

neither is specific to arbitration agreements. See Brewer, 364 S.W.3d at 487 (recognizing

unconscionability analysis as a “traditional” part of Missouri contract law); Estrin Const. Co. v.

Aetna Cas. & Sur. Co., 612 S.W.2d 413, 419 (Mo. App. W.D. 1981) (applying contract of

adhesion analysis to an insurance contract); Hartland Computer Leasing Corp. v. Insurance

Man, Inc., 770 S.W.2d 525, 527-28 (Mo. App. E.D. 1989) (applying contract of adhesion

analysis to a lease dispute). Either theory would therefore fall within the FAA’s savings clause.

See Brewer, 364 S.W.3d at 492 (FAA permits consideration of “generally applicable state law

contract defenses”). We hold the arbitration provision is an unenforceable contract of adhesion

and affirm on that basis without reaching the question of unconscionability.

 A contract of adhesion is a form contract created and imposed by a stronger party on a

weaker one. Swain v. Auto Servs., Inc., 128 S.W.3d 103, 107 (Mo. App. E.D. 2003); Robin v.

Blue Cross Hosp. Serv., Inc., 637 S.W.2d 695, 697 (Mo. banc 1982). These contracts are often

5
 The MUAA contains a “savings clause” that is identical in wording to the one in the FAA. § 435.350 RSMo.
(arbitration agreements are enforceable “save upon such grounds as exist at law or in equity for the revocation of
any contract”). Thus, while we conclude that Verizon is correct in its contention that the FAA, not the MUAA,
governs enforceability of the Customer Agreement (Point I in its brief), that conclusion does not warrant reversal
because under either statute the ultimate issue is the same: Whether the arbitration provision in the Customer
Agreement is revocable on general grounds applicable to any contract in Missouri.

 5
described as being on a “take this or nothing” basis. Id. “[T]hey are not expected to be read . . ..”

Estrin Const. Co., 612 S.W.2d at 419. Adhesion contracts are not “inherently sinister and

automatically unenforceable.” Swain, 128 S.W.3d at 107. The bulk of contracts signed in this

country are form contracts and “much of modern business is done on terms dictated by one

contract party to another who has no voice in its formulation.” 1 Corbin on Contracts § 1.4 (Rev.

ed. 1993); see also Swain, 128 S.W.3d at 107. Any rule automatically invalidating this kind of

contract would be “completely unworkable.” Hartland Computer Leasing Corp, 770 S.W.2d at

527. When a contract of adhesion exists, the writing is not necessarily unenforceable. Id. But

pursuant to Missouri law, courts review adhesion contracts to ensure that the contract matches

the parties’ “reasonable expectations.” Id.; Swain, 128 S.W.3d at 107.

 The Customer Agreement in this matter is an adhesion contract. Plaintiff is an individual

customer and Verizon is a sophisticated corporation. Signed by Plaintiff, the 2015 store receipt

loosely refers to the settlement of disputes by arbitration, but does not contain the contract terms.

In particular, the store receipt does not contain language regarding which disputes would be

subject to arbitration, including language Verizon relies on regarding disputes with its

employees. Instead, the store receipt language simply refers Plaintiff to the online Customer

Agreement that is only accessible on the Verizon website and outside the receipt’s boundaries.

The Customer Agreement was later identified by Verizon as a particular version (dated July 24,

2015) rather than as a negotiated document specific to Plaintiff or Verizon’s transaction with

Plaintiff.

 Additionally, the Customer Agreement language consists of ten pages of single-spaced

text, with pages seven through nine specifying the enforceable arbitration language Verizon

advocates. This arbitration language is printed in all capital letters and extends beyond one page

 6
in length. The transaction structure screams of “take this or nothing,” effectively nullifying any

meaningful negotiation opportunity. In fact the Customer Agreement expressly states that once

the customer activates the telephone, the customer is obligated to the terms and conditions of the

Agreement, whether or not they have read it. Following a 2015 retail transaction, the “store

receipt” obliged Plaintiff to agree to terms memorialized on the Verizon website purportedly

controlling a cause of action filed in 2020. These facts do not necessarily invalidate Verizon’s

Customer Agreement because Missouri law recognizes that this form of contract is “a natural

concomitant of our mass production-mass consumer society,” (Swain, 128 S.W.3d at 107), but

these facts are sufficient to show that the Customer Agreement was a contract of adhesion.6

 After concluding Verizon’s Customer Agreement is a contract of adhesion, Missouri law

requires the court to scrutinize whether the agreement comports with “the objectively reasonable

expectations of the parties.” Hartland Computer Leasing Corp., 770 S.W.2d at 527-28. A party

is not bound by terms of a “contract of adhesion which are outside and beyond the reasonable

expectations of the person signing the contract.” Heartland Health Sys., Inc. v. Chamberlin, 871

S.W.2d 8, 10-11 (Mo. App. W.D. 1993). Such provisions are unenforceable. Hartland Computer

Leasing Corp, 770 S.W.2d at 527 (citing Corbin on Contracts); Swain, 128 S.W.3d at 107; Am.

Nat. Prop. & Cas. Co. v. Wyatt, 400 S.W.3d 417, 426-27 (Mo. App. W.D. 2013) (holding

pollution exclusion in homeowner’s insurance policy unenforceable when applied to carbon

monoxide poisoning under the “reasonable expectations” rule). The “reasonable expectations”

test is objective; it applies the expectations of the “average member of the public who accepts

6
 Challenging this conclusion, Verizon relies on two cases, Grossman v. Thoroughbred Ford, Inc., 297 S.W.3d 918,
922 (Mo. App. W.D. 2009), and State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 857 (Mo. banc 2006), in which
there was evidence and testimony that the contracts in question were negotiable in all respects. The record in the
present case does not contain any such evidence.

 7
such a contract, not the subjective expectations of an individual adherent.” Hartland Computer

Leasing Corp, 770 S.W.2d at 527-28.

 Missouri law provides additional, more specific guidance when considering the party’s

“reasonable expectations.” In short, the court is obliged to consider the contractual language as

well as “the totality of the circumstances surrounding the transaction.” Id. at 527. Moreover,

“[t]he reasonable expectations of the parties are gathered not only by the words of the supposed

contract, but by all the circumstances of the transaction.” Heartland Health Sys., Inc., 871

S.W.2d at 11.

 Here, Verizon asks the court to enforce an arbitration provision that exceeds the scope of

what reasonable parties expect. A reasonable party signing a sales receipt might understandably

expect the writing to address common, ordinary service provider disputes, such as billing

matters, service quality or product and warranty issues. Terms in the Customer Agreement make

repeated reference to billing or services interruption disputes, and limit customers’ rights with

respect to those topics. This reinforces the likelihood that a reasonable party signing a sales

receipt in a retail setting would not anticipate that they were altering their legal position on issues

affecting personal matters and privacy in the manner alleged here.

 The totality of the circumstances is compelling. Verizon attempts to obligate Plaintiff to

the terms and conditions of its elusive Customer Agreement. Plaintiff’s signature appears on a

receipt referencing the Customer Agreement that is located elsewhere, specifically on the

Verizon website. Admittedly, the receipt mentions settling disputes by arbitration, but the

reference is restricted to only a portion of a single sentence. Further, the phrase simply refers to

arbitration and does not describe, specify or define any binding conditions of arbitration. Only

electronically accessible, the separately located Customer Agreement also lacks Plaintiff’s

 8
signature. Equally noteworthy, Verizon asks the court to enforce an agreement between the

parties from 2015 but apply it to an incident occurring during a separate transaction in 2020,

beyond the boundaries of an ordinary telephone contract. In reality, anyone from a lawyer

learned in contract law to a layperson of limited ability would struggle to read, review and reach

an understanding of such a substantial legal document in the setting presented, an in-store

consumer retail sale. Applying the “reasonable expectations” rule to the totality of the

circumstances surrounding the transaction requires invalidating the arbitration provision as to

Plaintiff’s claims.

 In reaching this conclusion, we do not create a categorical rule that matters like this one

are not arbitrable, nor do we conclude that the arbitration provision in Verizon’s Customer

Agreement is generally unenforceable. Rather, applying the lesson of Brewer and its companions

when reviewing the relevant standards on a “case-by-case” basis, we conclude that a reasonable

party signing a store receipt to acquire a wireless telephone would not expect that they were

consenting to provisions affecting their legal protections from the kind of misconduct alleged by

Plaintiff. Accordingly, the Customer Agreement’s adhesive arbitration provision is

unenforceable to compel arbitration involving such a claim.

 Verizon offers two main arguments attempting to show the arbitration provision did

comport with the parties’ reasonable expectations. First, Verizon points out that the Customer

Agreement (but not the store receipt) contained language expressly providing that disputes with

Verizon employees would be arbitrable, and states that Plaintiff therefore had “notice” of this. In

a contract of adhesion, however, “[t]he printed words of contract alone . . . are not enough to

disclose the expectations of the parties.” Estrin Const. Co., 612 S.W.2d at 419.

 9
 Verizon advocates eloquently that the circumstances affecting Plaintiff are rooted in her

“dispute” with the Verizon employee, as memorialized in the Customer Agreement and

effectively triggering arbitration. However, the contractual language is only a portion of the

court’s consideration, and the court must also weigh “the circumstances of the transaction” when

evaluating the reasonable expectations of the parties. Heartland Health Sys., Inc., 871 S.W.2d at

11. And the collective circumstances are noteworthy. Although Plaintiff signed a store receipt

following a routine retail transaction, Verizon relies on the unsigned 2015 Customer Agreement

to govern tortious misconduct occurring years later that lacks any connection to the normal

course of telecommunication business. Verizon’s argument fails because it attempts to expand

the arbitrable issues to misconduct affecting Plaintiff’s privacy and personal matters and the

typical, ordinary customer would not enter an agreement expecting a telephone contract to

govern personal matters affecting privacy in the manner alleged in this case.

 Second, Verizon points out that Missouri law has enforced arbitration agreements

affecting employment discrimination claims that may, in some cases, involve conduct that is

analogous to what is alleged in this case. But the cases cited show this did not involve adhesion

contracts and therefore did not apply the “reasonable expectation” standard. Under that standard,

as applied to the facts and circumstances of this case, the Customer Agreement’s arbitration

provision is unenforceable.

 Verizon contends that the trial court stated in its order that arbitration agreements which

are contracts of adhesion are unenforceable, citing § 435.350 RSMo. Verizon contends that the

imposition of such a categorical rule for arbitration agreements when no such rule exists for

adhesion contracts generally would violate the FAA’s requirement that arbitration agreements be

placed on equal footing with other contracts. Reading the decision below as a whole, however,

 10