Jerry GROSSMAN, et ux., Respondents,

v.

THOROUGHBRED FORD,
INC., Appellant.

No. WD 69906.

Missouri Court of Appeals,
Western District.

Oct. 30, 2009.

As Modified Dec. 22, 2009.

Arnold R. Day, Jr., Esq., Kansas City, MO, for appellant.

Kimberly J. Westhusing, Esq., Kansas City, MO, for respondent.

Before DIVISION THREE: HAROLD L. LOWENSTEIN [1], Presiding Judge, JOSEPH M. ELLIS and LISA WHITE HARDWICK, Judges

LISA WHITE HARDWICK, Judge.

Thoroughbred Ford, Inc. ("Thoroughbred") appeals the judgment denying its motion to compel arbitration of fraud claims brought by Jilana and Jerry Grossman ("Grossmans"). For reasons explained herein, we reverse and remand.

FACTUAL AND PROCEDURAL HISTORY

On July 23, 2005, the Grossmans signed a Retail Buyers Order to purchase a new 2005 Ford Explorer from Thoroughbred. The purchase agreement contained a notice of arbitration and a provision requiring the parties to settle "any and all claims or disputes ... by binding arbitration."

Two years after purchasing the vehicle, the Grossmans filed a petition in Clay County Circuit Court against Thoroughbred for fraud and violation of the Missouri Merchandising Practices Act. The Grossmans alleged that they discovered a damaged seatbelt in the "new" vehicle and that the mileage did not comport with the mileage reported on the Odometer Disclosure. The Grossmans further alleged that the Missouri Department of Revenue rejected their title application because there was an existing lien on the vehicle.

Following a change of venue from Clay County to the Platte County Circuit Court, Thoroughbred filed a motion to stay the proceedings and compel arbitration based on the binding arbitration provision in the purchase agreement. In response, the Grossmans argued the arbitration agreement was unenforceable as a contract of adhesion and the terms of the agreement were unconscionable.

At a hearing on the motion, the Grossmans testified they were unaware of the arbitration provision because they did not read the purchase agreement at the time they signed it. On cross-examination, the Grossmans acknowledged that their signatures appeared next to the following notice in bold print:

**THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

The circuit court entered a "Judgment Denying the Motion to Stay Proceeding and Compel Arbitration" without explanation. Thoroughbred appeals.

ANALYSIS

Thoroughbred contends the circuit court erred in denying the motion to compel arbitration because the Grossmans' legal defenses were inapplicable and the arbitration provision in the purchase agreement was valid and enforceable under federal and state law. The question of whether the motion to compel should have been granted is one of law, which we review *de novo*. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo.banc 2006).

In response to the motion to compel arbitration, the Grossmans raised two defenses: (1) the arbitration provision was unenforceable under Missouri law as a contract of adhesion; and (2) the arbitra-

---

1. Judge Lowenstein was a member of the court at the time this case was submitted, but has since retired.

tion provision was unconscionable because it limited punitive damages to $5,000 and effectively left the Grossmans without a remedy to recover their losses. Aside from these defenses, the Grossmans do not dispute that the fraud claims raised in the petition were covered by the arbitration agreement. We will address these defenses in the context of determining whether the arbitration agreement was valid and enforceable under the applicable laws.

## Contract of Adhesion

■■ An arbitration clause in an adhesion contract is not enforceable under the Missouri Uniform Arbitration Act (MUAA), Section 435.350 RSMo.2000.[2] As a preliminary. matter, Thoroughbred argues this provision of the MUAA is inapplicable because the purchase agreement specifically provides that the "Federal Arbitration Act [FAA] shall govern issues of arbitration." Thoroughbred contends Section 435.350 conflicts with the FAA, which does not exempt contracts of adhesion, and is thereby pre-empted by the federal arbitration rules. *Swain v. Auto Servs., Inc.,* 128 S.W.3d 103, 106 n. 2 (Mo.App.2003); *Kagan v. Master Home Prods. Ltd.,* 193 S.W.3d 401, 407 (Mo.App.2006). However, in light of our ultimate conclusion that the Grossmans failed to establish that the purchase agreement was a contract of adhesion and thus the MUAA exemption is inapplicable, we need not address the pre-emption argument.

■■ Our court previously defined adhesion contracts in *Swain:*

In Missouri, an adhesion contract, as opposed to a negotiated contract, has been described as a form contract created and imposed by a stronger party upon a weaker party on a 'take this or nothing basis,' the terms of which unexpectedly or unconscionably limit the obligations of the drafting party. Adhesion contracts usually involve unequal bargaining power of a large corporation versus an individual and are often presented in pre-printed form contracts. But they are not inherently sinister and automatically unenforceable. Because the bulk of contracts signed in this country are form contracts—a natural concomitant of our mass production-mass consumer society—any rule automatically invalidating adhesion contracts would be completely unworkable. Rather, our courts seek to enforce the reasonable expectations of the parties. Only those provisions that fail to comport with those reasonable expectations and are unexpected and unconscionably unfair are unenforceable. Because standardized contracts address the mass of users, the test for 'reasonable expectations' is objective, addressed to the average member of the public who accepts such a contract, not the subjective expectations of an individual adherent.

128 S.W.3d at 107 (internal citations and quotations omitted). The negotiability of a contract is important in determining the bargaining power of the parties. One of the key elements of an adhesive contract is that the terms of the agreement are non-

**2.** Section 435.350 provides:

**Validity of arbitration agreement, exceptions.**—A written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance or contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is val-

id, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. Contracts which warrant new homes against defects in construction and reinsurance contracts are not "contracts of insurance or contracts of adhesion" for purposes of the arbitration provisions of this section.

negotiable. *Id.*; *Schneider,* 194 S.W.3d at 857.

The Grossmans have argued that they are individual consumers and Thoroughbred Ford is a large dealership, but that factor standing alone is not sufficient to prove an adhesion contract. *Swain,* 128 S.W.3d at 107. They also pointed out that the purchase agreement was a pre-printed, form contract and the arbitration provision was in small type on the back page. However, next to the signature line appeared the clear notice—in ten point capital letters as required by Section 435.460, RSMo 2000—that the contract contained a binding arbitration provision.

■ In support of their argument that the purchase agreement was imposed in a "take it or leave it" fashion, the Grossmans testified that Thoroughbred presented the documents in a "stapled bundle" and directed them to the various signature lines without any explanation of the contract provisions. But they did not present any evidence regarding the negotiability of the contract and expressly waived the opportunity to do so at the hearing on the motion to compel arbitration.[3] Importantly, they declined to dispute Thoroughbred's position that "everything on the printed form [was] negotiable." There is no evidence to suggest that the Grossmans inquired about the terms of purchase or attempted to negotiate. In fact, they testified they did not read the purchase agreement. Missouri law presumes that a party had knowledge of the contract he or she

signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing. *Dorsch v. Family Med. Inc.,* 159 S.W.3d 424, 437 (Mo.App.2005).

■ Further with regard to negotiability, Thoroughbred points out that there are many Ford dealerships in the Kansas City area, and the Grossmans could have sought different terms from another dealer. Their options were not limited to purchasing the vehicle from Thoroughbred. Generally with regard to adhesive contracts, the "stronger party" has more bargaining power because the " 'weaker party' is unable to look elsewhere for more attractive contracts." *Schneider,* 194 S.W.3d at 857. The Grossmans offered no proof that all Ford dealers use the same arbitration terms in purchase agreements. *Id.* The totality of the evidence failed to demonstrate that Thoroughbred presented the contract on a "take this or nothing basis." *Id.* Accordingly, on this record, we cannot conclude the arbitration provision was a contract of adhesion.

## Unconscionability

■■ We now turn to the question of whether the binding arbitration provision was unconscionable. The doctrine of unconscionability allows courts to invalidate contracts that subject one of the parties to an absence of meaningful choice and unfairly oppressive terms. *Schneider,* 194 S.W.3d at 858.

---

**3.** At the beginning of the hearing on the motion to compel arbitration, Thoroughbred advised the court that it could present testimony from the dealership management regarding the negotiability of the purchase agreement and arbitration provision. The Grossmans' counsel stated that they would only present evidence regarding the Grossmans' knowledge of the existence of the arbitration provision and their lack of understanding of its

terms. The parties essentially agreed that no evidence would be presented on the issue of the negotiability of the purchase agreement. Later during the hearing, the Grossmans' counsel attempted to ask Mr. Grossman whether anyone at the dealership had said the arbitration provision was negotiable. Thoroughbred objected and the Grossmans' counsel voluntarily withdrew the question based on the parties' pre-hearing agreement.

Generally, either procedural and substantive unconscionability must be shown before a contract or clause can be voided. *Id.*. Procedural unconscionability focuses on the process of making a contract and involves such factors as high pressure sales tactics, unreadable fine print, misrepresentation, or unequal bargaining positions. *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 308 (Mo. App.2005). Substantive unconscionability relates to the contractual language and arises when the terms of an arbitration agreement are unduly harsh. *Id.*

In responding to the motion to compel arbitration, the Grossmans argued that the binding arbitration provision was *substantively* unconscionable because it limited them to recovery of actual damages for the difference in value between a new vehicle and a used one, and it limited punitive damages to $5,000. They asserted the arbitration clause deprived them of an effective remedy because "the financial burden of pursuing their claims would outweigh even the most favorable result, and would allow [Thoroughbred] *carte blanche* to continue the type of practices inflicted upon the [Grossmans] unabated."

The Grossmans cited *Whitney v. Alltel Communications, Inc.* in support of their unconscionability defense. They acknowledged that the arbitration clause in *Whitney* was invalidated upon a showing of *both* procedural and substantive unconscionability. As an initial matter, their reliance on *Whitney* is misplaced because the Grossmans failed to make any showing of procedural unconscionability, particularly in light of their admission that they did not read the purchase agreement and the notice of arbitration was boldly printed next to their signatures. The notice established a reasonable expectation that the parties would resolve their disputes through arbitration rather than litigation. The exis-

tence of this reasonable expectation mitigates against any finding of procedural unfairness in the arbitration agreement. *Id.* at 311.

In *Whitney*, the plaintiff was contesting a billing charge of $.88 per month as an alleged tax for wireless phone services. *Id.* at 304. The damages from the monthly billings totaled $24.64 by the time the trial court ruled on Alltel's motion to compel arbitration. *Id.* at 313. The court concluded the arbitration provision in the wireless phone contract was substantively unconscionable in that it prohibited any award of incidental, consequential, punitive or exemplary damages, and/or attorney's fees. *Id.* The arbitration provision also required the wireless customer to bear the costs of arbitration and prohibited class action suits. *Id.* Under these conditions, the court concluded that no single customer could afford to pursue a case against Alltel for minimal damages, and thus, the company could continue to collect millions of dollars in improper charges because the arbitration provision did not provide a practical remedy for aggrieved customers. *Id.* at 314.

The circumstances in *Whitney* differ starkly from the facts presented to the circuit court in this case. The Grossmans purchased their vehicle for more than $40,000 and were not contractually limited in seeking incidental or consequential damages for any loss due to the alleged fraud. The arbitration provision permits the Grossmans to seek punitive damages, up to $5,000. The agreement further provides that the parties would share the costs of the arbitration and pay their own attorneys' fees, but it reserves the arbitrator's authority to assess costs against any party who fails to fully cooperate with the proceedings. Unlike *Whitney*, there was no clear showing that an individual would be discouraged from pursuing their claims because of the restrictive arbitration terms.

The evidence did not establish that the Grossmans would pay more to arbitrate their claims than they could possibly recover in damages. Because the arbitration agreement was not unfairly oppressive and did not deprive the Grossmans of meaningful choices, it did not rise to the level of substantive unconscionability.

Our holding is limited to a determination that the parties' general agreement to arbitrate is not unconscionable. We recognize that the record may not be fully developed as to the effect of the punitive damages limitation and the extent to which the Grossmans can fully recover their losses due to the alleged fraudulent conduct. The remedial provisions of the arbitration clause are not essential to the remainder of the arbitration agreement and may be severable upon a more specific showing of unconscionability. *Swain*, 128 S.W.3d at 109. Thus, even if an arbitrator or the circuit court subsequently found any of the remedial provisions invalid, those provisions would not impact the enforceability of the agreement to arbitrate.

### CONCLUSION

The Grossmans failed to demonstrate that the arbitration agreement was invalid as a contract of adhesion or on grounds of unconscionability. Except for these defenses, there is no dispute that the fraud claims were covered by the provision requiring the parties to settle "any and all claims ... by binding arbitration." Accordingly, the circuit court erred in denying Thoroughbred's motion to stay and compel arbitration. The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

All concur.