

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

| | |
|---|---|
| MONARCH FIRE PROTECTION DISTRICT, | ) No. ED103728 |
| | ) |
| Plaintiff/Appellant, | ) Appeal from the Circuit Court |
| | ) of St. Louis County |
| vs. | ) |
| | ) Honorable Joseph L. Walsh, III |
| PROFESSIONAL FIRE FIGHTERS OF EASTERN MISSOURI LOCAL 2665, OF THE INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS (I.A.F.F.), ANDY STECKO, NICK SMITH, AND CHRIS GELVEN, | ) |
| | ) |
| Defendants/Respondents. | ) Filed: July 26, 2016 |

The plaintiff, Monarch Fire Protection District, appeals the grant of summary judgment entered by the Circuit Court of St. Louis County in favor of the defendants, Professional Fire Fighters of Eastern Missouri Local 2665, of the International Association of Fire Fighters, Andy Stecko, Nick Smith, and Chris Gelven (collectively "the union"), and the corresponding denial of the district's own motion for summary judgment in this case interpreting the parties' collective-bargaining agreement.

Because the agreement has a fixed duration and does not impermissibly delegate the legislative function of the district's publicly elected board of directors, we affirm the trial court's judgment.

*Factual and Procedural Background*

Monarch Fire Protection District is a fire-protection district, duly organized and existing pursuant to Missouri statute and operating within St. Louis County. In accordance with section 321.200 RSMo. (Supp. 2014), the district has a board of directors that meets regularly and exercises all powers of the board. The board consists of three directors, and elections for the board are held every two years. The board's powers include the power to adopt fire protection and prevention ordinances, and any other rules and regulations necessary to carry out the business, objects, and affairs of the board and the district. Section 321.600(12) RSMo. (2000).[1] The board's powers also include management, control, and supervision of all business affairs of the district; hiring and retaining agents, employees, engineers, and attorneys, including part-time or volunteer firefighters; and exercising all rights and powers necessary or incidental to or implied from the specific powers granted by statute. *See generally* sections 321.220 RSMo. (Supp. 2013) and 321.600.

The union is an unincorporated association, certified by the State Board of Mediation as the collective bargaining representative for the district's privates, engineers, firefighters/ paramedics, captains, paramedic shift supervisors, probationary firefighters/paramedics, fire inspectors, secretaries, and maintenance personnel.

After months of good-faith negotiation, the district and the union reached a collective-bargaining agreement that took effect January 1, 2011 for a period of three years, up to and including December 31, 2013. Section 5.02 of the agreement states:

> This Collectively Bargained Agreement shall take effect as of January 1, 2011, and shall continue in full force and effect for a period of approximately three (3) years to and including December 31, 2013.

---

[1] All statutory references are to RSMo. (2000) except as otherwise indicated.

> Should a single significant issue arise that one or both parties believe warrants the reopening of the agreement, the agreement may be reopened for re-negotiation of specific items, on such terms, as long as both parties in writing give forty-five (45) days' notice.

> This Agreement shall remain in effect during good faith negotiations and shall continue to remain in full force and effect until such time as a new Agreement is agreed upon.

The agreement was presented to the district's board of directors, and a majority of the board adopted the agreement as Ordinance No. 28.

At the heart of the parties' dispute lies section 5.02, paragraph 3 of the collective-bargaining agreement—language added at the insistence of the district—that provides as follows:

> This Agreement shall remain in effect during good faith negotiations and shall continue to remain in full force and effect until such time as a new Agreement is agreed upon.

On December 11, 2013, the district filed its petition seeking a declaratory judgment that section 5.02, paragraph 3 of the agreement is void, unenforceable, and against public policy and that the section renders the agreement a contract of indefinite duration, which would hence be terminable at will by either party. The union filed a counterclaim, seeking a declaratory judgment that section 5.02 of the agreement is enforceable.

The parties filed cross-motions for summary judgment. The trial court granted the union's motion for summary judgment, and denied the district's motion. The trial court concluded that section 5.02 does not render the agreement a contract for an indefinite term because it provides that the agreement terminates when either party fails to negotiate in good faith to reach a new agreement. The trial court also determined that section 5.02, paragraph 3 of the agreement does not impermissibly delegate the district's legislative function to the union, again because both parties are required to act in good faith to reach an agreement. The district appeals.

3

In five points on appeal, the district claims the trial court erred in granting the union's motion for summary judgment and in denying its contrary motion for summary judgment. The district makes two broad claims. First, the district contends that section 5.02, paragraph 3 renders the agreement a contract of indefinite, indeterminate, and unlimited duration, which would then be terminable at the will of either party. Second, the district contends that section 5.02, paragraph 3 is void as contrary to law and public policy because it impermissibly delegates the district's legislative function to the union, impermissibly vesting the union with veto power over district legislation, and purporting to bind successor district boards.

## Discussion

Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo*. *Id.*; *Ballman v. O'Fallon Fire Protection Dist.*, 459 S.W.3d 465, 466 (Mo. App. E.D. 2015). When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom the court entered judgment. *ITT*, 854 S.W.2d at 376; *Ballman*, 459 S.W.3d at 466.

Generally, the denial of summary judgment does not constitute a final, appealable judgment. *Cardinal Partners, LLC v. Desco Inv. Co. L.L.C.*, 301 S.W.3d 104, 111 (Mo. App. E.D. 2010). Authority exists, however, for the proposition that we may review the denial of summary judgment where the merits of the denial are intertwined with the propriety of an appealable grant of summary judgment to the opposing party. *Id.*

Article I, section 29 of the Missouri Constitution announces that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing."

4

This guarantee applies to employees in both the private and public sectors. *Am. Federation of Teachers v. Ledbetter*, 387 S.W.3d 360, 363 (Mo. banc 2012). When bargaining, proposals are made, and the other party either accepts or rejects them. *Id.* While the employer remains free to reject any proposal, the right to bargain collectively still requires negotiations between the employer and employee representatives to determine the conditions of employment. *Id.*

More particularly, section 105.520 provides that employees are granted the right to present proposals to their employer through employee representatives; the employer is required to meet, confer, and discuss the proposals; and the results of these discussions are to be placed in writing and presented to the appropriate administrative, legislative, or other governing body in the form of an ordinance, resolution, bill, or other form required for adoption, modification, or rejection. *Independence-Nat'l Educ. Ass'n v. Independence School Dist.*, 223 S.W.3d 131, 138 (Mo. banc 2007). "The law makes clear that a public employer is not required to agree to anything." *Id.*

In its first two points, the district contends that section 5.02, paragraph 3 renders the agreement a contract of indefinite, indeterminate, and unlimited duration, which would be terminable at the will of either party. In Point I, the district contends that the agreement is terminable at will as a contract of indefinite, indeterminate, and unlimited duration because section 5.02, paragraph 3 purports to bind the parties until they have agreed on a new collective-bargaining agreement. The trial court concluded that the section at issue does not render the agreement a contract for an indefinite term, but rather provides that either party may terminate the agreement by acting in bad faith.

The first paragraph of section 5.02 provides that the agreement shall remain in effect through December 31, 2013. But the third paragraph of section 5.02, which is at issue, states that

5

"[t]his Agreement shall remain in effect during good faith negotiations and shall continue to remain in full force and effect until such time as a new Agreement is agreed upon." The plain meaning of the first phrase—"[t]his Agreement shall remain in effect during good faith negotiations"—is that if either party ceases to engage in negotiations in good faith, then the agreement will no longer be in effect.

The district argues that given the conjunctive "and" linking the first and second phrases of the disputed paragraph, even if bad-faith bargaining occurs, the agreement remains in full force and effect until such time as the parties reach a new collective-bargaining agreement. In other words, the district would have us interpret the language of section 5.02, paragraph 3 to mean that the agreement forever binds the parties unless they reach a new agreement. We reject this interpretation.

First, we must read a contract in its entirety and give effect to each part. *Dubinsky v. Chemical Bank*, 748 S.W.2d 957, 959 (Mo. App. E.D. 1988). A construction that gives a reasonable meaning to all provisions will be preferred to one that leaves a portion of the contract useless or inexplicable. *Id.* The first phrase "[t]his Agreement shall remain in effect during good faith negotiations" must have some meaning of its own, apart from the second phrase that states "[this agreement] shall continue to remain in full force and effect until such time as a new Agreement is agreed upon." If the second phrase were intended to fully subsume the first phrase—in other words if the agreement is meant to remain in effect regardless of the lack of good-faith negotiations—then the first phrase serves no purpose whatsoever.

While the second phrase cannot completely subsume the first, at the same time the two phrases are not completely independent of one another. The word "and" here does not link two wholly distinct, independent elements. We do not have Phrase 1 (this agreement shall remain in

6

effect during good faith negotiations) plus an independent and overriding phrase 2 (this agreement shall continue to remain in full force and effect until such time as a new agreement is agreed upon). The second phrase stating that this agreement shall *continue* to remain in full force and effect until such time as the parties reach a new agreement depends upon the first phrase, which states that this agreement shall remain in effect during good-faith negotiations. The agreement can only *continue* to remain in effect if the agreement is still in effect because the parties are engaged in good-faith negotiations. Thus, if either party ceases to negotiate in good faith, the agreement would no longer remain in effect, and it certainly would not *continue* to remain in effect.

The district argues that even were the agreement terminable solely upon a failure to engage in good-faith negotiations, this end point is not sufficiently definite because "'good faith bargaining' is assessed on a case-by-case basis and is far from easy to define." We disagree. Under Missouri law, "good faith" is not an abstract concept, but is a concrete quality describing the motivating purpose of one's act or conduct when called into question. *Ledbetter*, 387 S.W.3d at 367. "'[G]ood faith' is more than a state of mind. . . . A breach of good faith is not so wholly within the realm of the mind that it cannot be reasonably inferable." *Krone v. Snapout Forms Co.*, 230 S.W.2d 865, 869 (Mo. 1950). A party's state of mind is reasonably inferable from what the party says, or fails to say, and from what the party does, or fails to do. *Id.* Parties act in "good faith" when they act without pretense, when they act innocently and with an attitude of trust and confidence. *Ledbetter*, 387 S.W.3d at 367. Parties acting in good faith act "honestly, openly, sincerely, without deceit, covin, or any form of fraud." *Id.* (citing *State ex rel. West v. Kiemer*, 164 S.W. 517, 521 (1914)). "Consequently, the course of a negotiation between parties acting in good faith should reflect that both parties sincerely undertook to reach an agreement."

7

*Id.* We agree with the trial court that a failure to negotiate in good faith is a sufficiently definite point that terminates the agreement. When either the union or the district fails to negotiate in good faith to reach a new agreement, the agreement terminates.

Finally, the district contends that because the agreement has no fixed duration either party can terminate the agreement at will. Again, we disagree. As discussed earlier, the agreement has a fixed duration, a duration that ends either when the parties reach a new agreement or when a party ceases to negotiate in good faith. We deny the district's first point.

In its second point, the district contends that section 5.02, paragraph 3 is void and unenforceable as contrary to public policy because its unlimited duration is unreasonable as a matter of law. We have already determined that section 5.02, paragraph 3 does not render the agreement a contract of indefinite, indeterminate, and unlimited duration. We deny the district's second point.

In its third, fourth, and fifth points, the district contends that section 5.02, paragraph 3 is void as contrary to law and to public policy because it impermissibly delegates the district's legislative function to the union. In its third point, the district contends that the disputed language delegates to the union a legislative function by purporting to bind the parties until they have agreed upon a new collective-bargaining agreement. The district argues that this section requires the district to first obtain the union's consent to legislate and to set the wages and working conditions of its employees, and that the union controls how long this delegation will last. In its fourth point, the district maintains that the disputed language impermissibly vests the union with veto power over legislation by purporting to bind the parties until they have reached a new collective-bargaining agreement. The district argues that section 5.02, paragraph 3 has the impermissible effect of prohibiting the current board from approving and enacting a new

8

ordinance to replace the existing agreement-implementing ordinance unless the union first approves the new ordinance. In its fifth and final point, the district contends that section 5.02, paragraph 3 impairs the district's successor board of directors by purporting to bind successor boards until they reach a new collective-bargaining agreement with the union. The district argues that while a public entity is bound by labor contracts its board enters, a subsequent board must have the power to rescind such contracts.

As we have already explained, section 5.02, paragraph 3 does not render the agreement a contract of indefinite, indeterminate, and unlimited duration. Nor does the disputed language forever bind the parties unless they reach a new agreement, as the district contends, because the agreement provides for an alternative termination point resulting when either party ceases to engage in negotiations in good faith.

Moving now to the district's contention that the agreement impermissibly impairs its legislative authority, the district's overarching argument in these three points is that the union possesses all the power. Whether called the union's "veto power," a requirement for the union's "consent," or the union's "holding the district hostage," the district essentially argues that the union can exercise complete control through its power to reject the district's proposals. The district ignores, however, that it enjoys the same power to reject the union's proposals, and it ignores the requirement for good-faith negotiations. Nothing in the law requires a public entity to agree to a proposal by its employee unions. *Independence*, 223 S.W.3d at 136.

The district's argument might best be understood as a house of cards. Its foundation rests "on the now largely defunct nondelegation doctrine, which holds that it is unconstitutional for the legislature to delegate its rule-making authority to another body." *Id.* at 135. Missouri, however, has largely abandoned the nondelegation doctrine. *Id.* Our Supreme Court has

9

repeatedly recognized that the public-sector labor law allows employers to reject all employee proposals so long as the employer has met and conferred with employee representatives. *Id.* at 136. As our Supreme Court cogently asked and answered in *Independence*:

> Under this interpretation, what legislative power or prerogative is being delegated? The answer today, of course, is none. If the public employer is free to reject any proposals of employee organizations, and thus to use its governing authority to prescribe wages and working conditions, none of the public entity's legislative or governing authority is being delegated.

*Id.* To allow employees to bargain collectively does not require that the employer agree to any terms. *Id.* at 137. The employer is free to reject any and all employee proposals, and "*[t]he employer is therefore not delegating or bargaining away any of its legislative power.*" *Id.* at 137-38 (emphasis added). "The nondelegation doctrine is no impediment to applying the plain meaning of this explicit constitutional command [that employees shall have the right to organize and to bargain collectively]." *Id.* at 138. Thus, a public employer that negotiates an agreement with its employee groups may not unilaterally impose a new employment agreement that contradicts the terms of the one then in effect. *Id.* at 133. While a public employer is not required to reach an agreement with its employees as to working conditions, once it has done so, the employer is bound by the terms of that agreement. *Id.* And while a contract executed by a public entity is the subject of legislative action by the entity, this does not mean that the entity is free to repudiate its agreements at will. *Id.* at 140.

It is not merely that that the district has built its argument on a faulty base. The district seeks to raise this house of cards to unsustainable heights. The district theorizes that it possesses the power to repudiate this contract at its will. Of course, acceptance of this would render any contract with a public entity unenforceable. The district believes it can repudiate this contract

10

any time the membership of its legislative body changes.[2] This would mean, for example, that the employment of first responders would be subject to the whim of the newest alderperson. No individual or organization could conduct business with a public entity that repudiates its agreements. *Id.*

The Missouri legislature has left no doubt as to what formalities a public entity should observe to create a binding contract. Section 432.070 RSMo. (Supp. 2013) provides the guide:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

Here, the district's board adopted the agreement as Ordinance No. 28. Here, the requirements for a binding contract under section 432.070 were scrupulously followed. Indeed, no one contends otherwise. Yet the district perseveres in asserting that it can unilaterally repudiate a contract it entered into in accord with Missouri law. With this argument, the district's house of cards careens toward its inevitable collapse.

Because the agreement does not delegate any legislative authority or power to the union, we deny the district's third, fourth, and fifth points.

*Conclusion*

We conclude that the agreement has a fixed duration and does not impermissibly delegate to the union the legislative function of the district's publicly elected board of directors. We affirm the trial court's grant of summary judgment in favor of the union, and its corresponding denial of summary judgment to the district.

---

[2] Ironically, the district would exempt legislative bodies, which normally promulgate laws, from the usual reach of contract law.

11

_____
LAWRENCE E. MOONEY, JUDGE

ROBERT M. CLAYTON III, P.J. and
JAMES M. DOWD, J., concur.

12