Darlene BERTOCCI, Respondent,

v.

THOROUGHBRED FORD, INC., and Ryan Brehm, Appellants.

WD 80151

Missouri Court of Appeals, Western District.

Opinion filed: September 26, 2017

Tiffannie M. Kennedy, for Respondent.

Arnold R. Day, Jr., Kansas City, for Appellants.

Before Division Four: Mark D. Pfeiffer, Presiding Judge, Victor C. Howard, Judge and Lisa White Hardwick, Judge

VICTOR C. HOWARD, JUDGE

Thoroughbred Ford, Inc. and Ryan Brehm appeal from the trial court's order denying their motion to stay proceedings and compel arbitration. The order is reversed, and the case is remanded.

## Factual and Procedural Background

On December 15, 2014, Darlene Bertocci signed a Retail/Lease Buyer's Order to purchase a 2014 Ford Edge from Thoroughbred Ford. The Buyer's Order, a one-page, two-sided form contract, contained the following provision in bold print at the bottom of the front page next to Ms. Bertocci's signature, "THIS CONTRACT CONTAINS A BINDING ARBITRA-

TION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." On the back of the agreement, the following provision was set out, in pertinent part:

ARBITRATION

The parties shall first seek to resolve any controversy between them by promptly negotiating with each other in good faith and if such negotiations are unsuccessful then any and all claims or disputes arising between the parties to this Agreement (but excluding controversies between Customer and third parties arising out of any retail installment contract, promissory note or instrument securing performance thereof, all collection claims by Thoroughbred Ford and also excluding Customer's warranty disputes with third parties) shall be settled by binding arbitration and the award of an arbitration shall be final and binding and there shall be no appeal therefrom; and a judgment upon such award may be entered in the US. District Court, Western District of Missouri, if that court has jurisdiction to enter the award, and if not, then in the Circuit Court of Platte County, Missouri.

* * *

If the parties cannot agree on one arbitrator within 15 days from the demand for arbitration then each party shall select one arbitrator within 30 days after the demand for arbitration and the two parties as so selected shall within 15 days after they are selected select a third arbitrator. If either party fails to select their arbitrator within 30 days of the demand for arbitration or if the two arbitrators as selected under the preceding sentence fail to select a third arbitrator within 15 days of their selection then the respective arbitrator shall be selected by a Circuit Court Judge serving Platte County, Missouri. All arbitra-

tors shall be selected from the membership of the Clay County, Missouri and/or Platte County, Missouri Bar Associations.

* * *

The arbitration shall be governed by the American Arbitration Association's Commercial Arbitration Rules unless otherwise expressly agreed by the parties. All issues of arbitration, including but not limited to this Agreement and its arbitration provisions, shall be governed by the Federal Arbitration Act (9 U.S.C. § 1, et seq.). Any doubt concerning the scope of arbitrable issues shall be resolved in favor of arbitration. The parties further agree and acknowledge that the vehicles and/or parts and materials contained and/or included therein have been transported, assembled, fabricated and/or created in states other than the State of Missouri and therefore the subject matter of this contract involves and concerns interstate commerce.

On March 2, 2016, Ms. Bertocci filed a petition against Thoroughbred Ford and Ryan Brehm, an employee of the dealership, (collectively Defendants) asserting claims for fraud, negligence, negligent misrepresentation, and violations of the Missouri Merchandising Practices Act (MMPA) arising out of her purchase of the vehicle. She alleged that Defendants made several misrepresentations to her and on her credit application regarding her financing of the car for her daughter-in-law. Specifically, she alleged that Defendants misrepresented to her that she would never be financially responsible for the vehicle, her daughter-in-law would not be able to cease making monthly payments and would be the new owner in twelve months, and her credit profile was strong enough to afford the vehicle. She alleged that she reasonably relied on such misrepresentations in making the purchase and that, as a

result of such misrepresentations, she suffered damages including the loss of use of the car, damage to her credit score and credit worthiness, an outstanding balance due on the repossessed vehicle, embarrassment, humiliation, frustration, destruction of family relations, and mental and emotional pain and suffering.

Defendants filed a motion to stay proceedings and compel arbitration. They asserted that Ms. Bertocci agreed to be bound by an arbitration provision contained in the Buyer's Order attached to their motion.

Ms. Bertocci filed suggestions and supplemental suggestions opposing Defendants' motion to compel asserting six different reasons why the arbitration clause in the Buyer's Order was unenforceable. She argued that (1) the arbitration clause lacked mutuality of consideration and the promise to arbitrate was illusory; (2) the arbitration provision was void because she was fraudulently induced into signing the Buyer's Order; (3) the arbitration provision was unconscionable; (4) her claims did not fall within the scope of the arbitration provision; (5) Defendants waived their right to arbitrate; and (6) she did not knowingly and voluntarily waive her right to a jury trial.

Following a hearing, the trial court denied Defendant's motion to stay proceedings and compel arbitration without explanation. This appeal by Defendants followed.

Defendants contend that the trial court erred in denying their motion to compel arbitration because the legal grounds asserted by Ms. Bertocci for finding the arbitration provision unenforceable did not apply. They assert that the arbitration agreement was valid and enforceable, all of her claims were within its scope, and they did not waive their right to arbitrate.

The judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015). Whether the trial court should have granted a motion to compel arbitration is a question of law that is reviewed *de novo. Id.* When faced with a motion to compel arbitration, the court determines whether a valid arbitration agreement exists and, if so, whether the specific dispute falls within the scope of the agreement. *Ellis v. JF Enters., LLC*, 482 S.W.3d 417, 419 (Mo. banc 2016). This opinion will address the defenses raised by Ms. Bertocci in the context of determining whether the arbitration agreement was valid and enforceable under applicable laws.

### Validity of Arbitration Agreement

Ms. Bertocci raised several issues concerning the existence and validity of the arbitration agreement. The arbitration clause in the Buyer's Order stated that it is subject to the Federal Arbitration Act (FAA).[1] "[T]he FAA . . . governs what courts may consider in determining whether an agreement to arbitrate is enforceable." *Id.* Under the FAA, an arbitration agreement is severable and must be considered separate and apart from the rest of the contract. *Id.* An arbitration provision's validity is subject to initial court determination while the validity of the contract as a whole (if the arbitration provi-

---

1. The Missouri Uniform Arbitration Act (MUAA), section 435.350 *et seq.*, governs matters not preempted by the FAA. *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 n. 4 (Mo. banc 2015). The MUAA was fashioned after the FAA, and the FAA and MUAA are substantially similar. *Id.*

sion is valid) is for the arbitrator to decide. *Id.* at 420-423 (citing *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 21, 133 S.Ct. 500, 184 L.Ed.2d 328 (2012); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

▆▆▆ Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2009). "[T]his provision allows arbitration agreements 'to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Eaton*, 461 S.W.3d at 432 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011)). "'As such, arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts[.]'" *Id.* (quoting *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 515 (Mo. banc 2012)). Thus, "a Missouri court can declare an arbitration agreement 'unenforceable if a generally applicable contract defense, such as fraud, duress, or unconscionability, applie[s] to concerns raised about the agreement.'" *Id.* (quoting *Robinson*, 364 S.W.3d at 515).

## A. Lack of Mutuality

▆▆▆ Ms. Bertocci first asserted that the arbitration agreement was void because it lacked mutuality of consideration and was illusory. She argued that under a Retail Installment Contract and Security Agreement executed at the time of the sale and construed with the Buyer's Order, Defendants could unilaterally divest themselves of their obligation to arbitrate and instead pursue judicial or self-help remedies while she was bound by the arbitration provision. In making such argument, Ms. Bertocci referenced the Retail Installment Contract and set out the applicable provision in her suggestions and supplemental suggestions in opposition to the motion to compel. The Buyer's Order and Ms. Bertocci's credit application were introduced into evidence at the hearing on the motion to compel. The Retail Installment Contract, however, was not introduced into evidence nor was its authenticity established by the usual methods such as pleadings, affidavits, interrogatories, requests for admissions, or testimony. An appellate court cannot accept counsels' statements or averments as substitute for record proof even if there is no reason to doubt counsels' accuracy. *Ryan v. Raytown Dodge Co.*, 296 S.W.3d 471, 473 (Mo. App. W.D. 2009); *AJM Packaging Corp. v. Crossland Constr. Co.*, 962 S.W.2d 906, 911 (Mo. App. S.D. 1998). Moreover, "[e]xhibits attached to motions filed with the trial court are not evidence and are not self-proving." *Ryan*, 296 S.W.3d at 473 (internal quotes and citation omitted). Ms. Bertocci acknowledges in her brief that the Retail Installment Contract was not admitted into evidence and that only those documents that have been authenticated can be considered. She made no argument to the trial court, and makes no argument on appeal, that the arbitration provision contained in the Buyer's Order alone lacked mutuality of consideration or was illusory. Thus, her arguments regarding lack of mutuality and the illusory nature of the agreement could not have provided a basis to deny the motion to compel arbitration.

## B. Fraud in the Inducement

▆▆▆ Next, Ms. Bertocci claimed that the arbitration agreement was void be-

cause she was fraudulently induced into signing the Buyer's Order to purchase the 2014 Edge by several misrepresentations made by employees of the dealership. In *Prima Paint Corp.*, the United States Supreme Court held that if a claim of fraud in the inducement goes to the making of the arbitration clause itself, a court may adjudicate the issue. 388 U.S. at 403-404, 87 S.Ct. 1801. Under the FAA, a court may not, however, consider claims of fraud in the inducement of the contract generally. *Id.* at 404, 87 S.Ct. 1801. *See also Ellis*, 482 S.W.3d at 420-21. Ms. Bertocci's argument was a challenge to the Buyer's Order as a whole and not aimed discretely at the arbitration agreement alone. Her fraudulent inducement claim must be arbitrated, and the trial court could not have found the arbitration provision void under such argument.

### C. Unconscionability

■ Next, Ms. Bertocci argued that the arbitration agreement was unconscionable in its formation. The doctrine of unconscionability guards against one-sided contracts, oppression, and unfair surprise. *Eaton*, 461 S.W.3d at 432;

> Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the objectively unreasonable terms. In either case, the unconscionability is linked inextricably with the process of contract formation because it is at formation that a party is required to agree to the objectively unreasonable terms.

*Id.* (quoting *Brewer v. Mo. Title Loans*, 364 S.W.3d 486, 493 (Mo. banc 2012)). A court will look at both the procedural and substantive aspects of a contract to determine whether, considered together, they make the agreement unconscionable. *Id.* at 433. Common factors indicating uncon-

scionability include, but are not limited to, high pressure sales tactics, unreadable fine print, and misrepresentation or unequal bargaining positions. *Id.* Additionally, courts consider whether the terms of the arbitration agreement are unduly harsh. *Id.* " 'This is a fact-specific inquiry focusing on whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party or which reflect an overall imbalance in the rights and obligations imposed by the contract at issue.' " *Id.* (quoting *Brewer*, 364 S.W.3d at 489 n.1).

■ Ms. Bertocci first claimed that high pressure sales tactics and unequal bargaining positions made the arbitration agreement unconscionable. Specifically, she asserted that she was rushed through the process, did not understand the paperwork she was signing, and was not given a chance to review the paperwork.

■ " '[A] court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally.' " *Id.* at 438 (quoting *Robinson*, 364 S.W.3d at 515). "[B]ecause the bulk of contracts signed in this country are pre-printed, form contracts, any rule automatically invalidating such contracts would be completely unworkable." *Id.* (internal quotes and citation omitted). Rather, in determining whether to enforce the terms of a contract of adhesion, a court should look not only to the take-it-or-leave-it nature of the contract but also to the subject matter of it, the parties' relative bargaining positions, the degree of economic compulsion motivating the adhering party, and the public interests affected by the contract. *Id.*

■ The contract's negotiability is important in determining the bargaining

power of the parties. *Grossman v. Thoroughbred Ford, Inc.,* 297 S.W.3d 918, 921 (Mo. App. W.D. 2009). "One of the key elements of an adhesive contract is that the terms of the agreement are non-negotiable." *Id.* at 921-22.

At the hearing, Defendants presented the testimony of Stephanie Porter, the dealership's corporate representative, that everything in the Buyer's Order was negotiable except the price because the price was fixed under Ford's A Plan for employees and family members. Defendants also presented the testimony of Dan Fisher, the finance manager at the dealership, that he discloses to every customer that disputes are resolved through arbitration. Ms. Bertocci testified that she never met Mr. Fisher before the hearing and that nobody at the dealership used the word arbitration, told her that disputes between the parties had to be brought in arbitration, showed her the arbitration provision in the Buyer's Order, or told her that the terms of the arbitration provision were negotiable. She said that during execution of the documents, papers were being "flipp[ed] like a deck of cards and [she] actually got upset" and told them, "if I'm signing something that I'm not supposed to be signing that I would call the next day and complain."

▮ While Ms. Bertocci testified that she was never told that the terms of the arbitration provision were negotiable, she never testified that she asked to negotiate them and did not dispute Defendants' evidence that everything but the price was negotiable. Furthermore, Ms. Bertocci admitted at the hearing that she could have

gone to another dealership. "Generally with regard to adhesive contracts, the stronger party has more bargaining power because the weaker party is unable to look elsewhere for more attractive contracts." *Id.* at 922 (internal quotes and citation omitted). Ms. Bertocci offered no evidence that all Ford dealerships use the same arbitration terms in purchase agreements.

Furthermore, while Ms. Bertocci testified that no one told her about the arbitration agreement, the Buyer's Order provided clear notice that it contained an arbitration provision. The notice, which appears to comply with section 435.460,[2] was conspicuously placed next to the signature line in all capital letters in bold print. The arbitration provision itself was on the backside of the Buyer's Order in its own paragraph under the heading "ARBITRATION."

▮ "Missouri law presumes that a party had knowledge of the contract he or she signed; and those who sign a contract have a duty to read it and may not avoid the consequences of the agreement on the basis that they did not know what they were signing." *Grossman,* 297 S.W.3d at 922. No evidence was introduced that Ms. Bertocci was told not to read the documents. The notice of arbitration boldly printed next to Ms. Bertocci's signature established a reasonable expectation that the parties would resolve their disputes by arbitration. "The existence of this reasonable expectation mitigates against any finding of procedural unfairness in the arbitration agreement." *Id.* at 923 (admission that plaintiffs did not read vehicle purchase agreement containing arbitration

---

**2.** That statute provides, "Each contract subject to the provisions of section 435.350 to 435.470 shall include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read substantially as follows: 'THE CONTRACT CON-

TAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.'" § 435.460. The font size of the notice of arbitration was unknown but was the same size or bigger than the other terms on the front of the Buyer's Order.

provision and notice of arbitration printed boldly next to their signatures mitigates against finding of procedural unconscionability.

■ Ms. Bertocci further asserted that the method set out in the arbitration provision for selecting an arbitrator was harsh, procedurally ineffective, and, thus, unconscionable. Specifically, she claimed that the requirement in the provision that all arbitrators shall be selected from the membership of the Clay or Platte County Bar Associations would allow the parties to select their own attorneys as arbitrators leaving the third arbitrator selected by a circuit court judge as the only decision maker, effectively denying her access to a fair and impartial arbitration.

The FAA directs that the method provided in the parties' arbitration agreement for selection of the arbitrator shall be followed. 9 U.S.C. § 5 (2009)("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed."). Here, the arbitration agreement expressly authorized a tripartite arbitration panel if the parties cannot agree on one arbitrator. Such panel includes two partisan arbitrators, one selected by each party, and one neutral decision-maker. *Delta Mine Holding Co. v. AFC Coal Props., Inc.*, 280 F.3d 815, 824 (8th Cir. 2001).

Ms. Bertocci did not argue that the third arbitrator to be selected by the parties' arbitrators, or the circuit court judge if they can't agree, was biased. This is not a case where a sole arbitrator was prescribed by the arbitration contract and that arbitrator was biased. *See State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 813 (Mo. banc 2015)(provision in employment contract designating biased NFL Commissioner as sole arbitrator in any dispute between employee and St. Louis Rams was

unconscionable); *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. banc 2006)(provision in arbitration agreement between a home builder and home purchases designating biased president of home builders association as the sole selector of the arbitrator was unconscionable). "Courts have repeatedly upheld agreements for arbitration conducted by party-chosen, nonneutral arbitrators, particularly when a neutral arbitrator is also involved. These cases implicitly recognize it is not necessarily unfair or unconscionable to create an effectively neutral tribunal by building in presumably offsetting biases." *Tate v. Saratoga Savings & Loan Assoc.*, 216 Cal.App.3d 843, 265 Cal.Rptr. 440, 445 (1989)(internal citations omitted), *abrogated on other grounds by Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal.4th 362, 36 Cal.Rptr.2d 581, 885 P.2d 994 (1994). *See also Delta Mine Holding*, 280 F.3d at 824.

■ "The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen." *Delta Mine Holding*, 280 F.3d at 821 (internal quotes and citation omitted). The arbitrator selection provision authorizing a tripartite arbitration panel in this case was not inherently unfair or oppressive. Ms. Bertocci failed to show that the arbitration provision was unconscionable.

### Scope of Arbitration Agreement

Ms. Bertocci next contended that her claims did not fall within the scope of the arbitration agreement. Specifically, she asserted that her tort claims did not arise directly out of dispute regarding the terms of the parties' contract and that Defendants never intended the arbitration provision to apply to the MMPA claim.

▆▆▆▆ While the FAA expresses a federal policy favoring resolution of disputes by enforcing arbitration agreements, such policy alone does not extend an arbitration agreement beyond its intended scope. *Tucker v. Vincent*, 471 S.W.3d 787, 794 (Mo. App. E.D. 2015). " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). *See also Ruhl v. Lee's Summit Honda*, 322 S.W.3d 136, 139 (Mo. banc 2010). As such, "[a]n arbitration clause is to be construed so as to favor arbitrability and an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause does not cover the asserted dispute." *Getz Recycling, Inc. v. Watts*, 71 S.W.3d 224, 229 (Mo. App. W.D. 2002)(internal quotes and citation omitted). The FAA provides that " 'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). If the parties agreed to arbitrate the dispute, arbitration must be compelled. *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003).

▆▆▆▆ Whether a dispute is covered by an arbitration clause is relegated to the courts as a question of law and is determined from the contract entered into by the parties. *Id.*; *Riley v. Lucas Lofts Inv'rs, LLC,* 412 S.W.3d 285, 290-91 (Mo. App. E.D. 2013). The usual rules and canons of contract interpretation are applied in making such determination. *Dunn,* 112 S.W.3d at 428; *Riley*, 412 S.W.3d at 291.

▆▆▆▆ In construing arbitration provisions, courts have categorized them as "broad" or "narrow." *Dunn,* 112 S.W.3d at 428. A broad arbitration clause covers all disputes arising out of a contract to arbitrate; a narrow clause limits arbitration to specific types of disputes. *Id.* Where an arbitration provision is broad, there is a strong presumption in favor of arbitrability, and the trial court should order arbitration of any dispute that touches matters covered by the parties contract. *Ruhl*, 322 S.W.3d at 139; *Manfredi v. Blue Cross & Blue Shield of Kansas City*, 340 S.W.3d 126, 130 (Mo. App. W.D. 2011); *Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 12 (Mo. App. W.D. 2008).

▆▆▆▆ Ms. Bertocci first asserted that her tort claims did not fall within the scope of the arbitration agreement because they did not arise directly out of a dispute regarding the terms of the parties' contract. The arbitration provision stated, in pertinent part, "all claims or disputes arising between the parties to this Agreement (but excluding controversies between Customer and third parties arising out of any retail installment contract, promissory note or instrument securing performance thereof, all collection claims by Thoroughbred Ford and also excluding Customer's warranty disputes with third parties) shall be settled by binding arbitration." Three types of disputes were specifically excluded from the arbitration agreement—controversies between Ms. Bertocci and third parties regarding a retail installment contract, promissory note, or instrument securing performance thereof; warranty disputes between Ms. Bertocci and third parties; and collection claims by Thoroughbred Ford. Except for these three types of ex-

cluded disputes, which were not involved in this case, the arbitration language was exceedingly broad, purporting to encompass any dispute between the parties. The arbitration provision did not limit its application to disputes over the terms or conditions of the Buyer's Order. Thus, Ms. Bertocci's argument that her tort claims were not subject to arbitration because they would not require reference to or construction of the terms of the contract failed. *Cf. Riley*, 412 S.W.3d at 292 (claims for fraud, negligent misrepresentation, fraudulent misrepresentation, and breach of the MMPA arising out of purchase of condominium units did not fall within scope of arbitration provision that limited arbitration to disputes regarding "the construction of Unit sold hereunder and/or this Contract").

Ms. Bertocci's claims were based on Defendants' alleged misrepresentations to persuade her to purchase the vehicle and sign the Buyer's Order containing the arbitration provision. These claims were within the broad scope of the arbitration provision that covers any dispute between the parties and were, therefore, subject to arbitration.

█ Ms. Bertocci also argued that Defendants never intended the arbitration clause to govern matters related to consumer claims because the clause adopted the American Arbitration Associations Commercial Rules instead of the Consumer Rules that typically apply to automobile purchases. However, "the Consumer Rules are not a separate set of AAA rules, but are instead a part of, and a supplement to, the Commercial Rules." *Adamson v. Foulke Mgmt. Corp.*, No. 08-4819, 2009 WL 5174642, at *12 n.9 (D. N.J. Dec. 18, 2009). The Commercial Rules incorporate the Consumer Rules as a supplement under Commercial Rules R-1:

The AAA applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are nonnegotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator.

*See also Adamson*, 2009 WL 5174642, at *6. Similarly, the Consumer Rules C-1 states, "The Commercial Dispute Resolution Procedures and these Supplementary Procedures for Consumer-Related Disputes shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business" where the above requirements are met. *See also Adamson*, 2009 WL 5174642, at *6. Thus, the arbitration agreement's reference to the Commercial Rules did not exclude Ms. Bertocci's consumer-related claims from the scope of the agreement. Ms. Bertocci's claims were within the scope of the broad arbitration provision.

### Waiver of Right to Arbitrate

█ Ms. Bertocci next claimed that Defendants waived their right to arbitrate when they failed to negotiate in good faith prior to requesting arbitration as required by the arbitration agreement. The first sentence of the arbitration provision provided, in relevant part, "The parties shall first seek to resolve any controversy be-

tween them by promptly negotiating with each other in good faith and if such negotiations are unsuccessful then any and all claims or disputes arising between the parties to this Agreement . . . shall be settled by binding arbitration[.]" She argued that she extended two opportunities to Defendants to negotiate their dispute prior to filing her petition and Defendants failed and refused to negotiate both times.

■■■■ "A party may waive its right to arbitration." *Gentry v. Orkin, LLC*, 490 S.W.3d 784, 788 (Mo. App. W.D. 2016). Whether a party has waived its right to arbitration is determined on a case-by-case basis. *Id.* " 'A party waives its right to arbitrate if it: (1) had knowledge of the existing right to arbitrate; (2) acted inconsistently with that right; and (3) prejudiced the party opposing arbitration.' " *Id.* (quoting *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo. App. W.D. 2010)). A party acts inconsistently with its right to arbitrate if it fails to follow the procedural steps required by the arbitration agreement. *Boulds v. Dick Dean Economy Cars, Inc.*, 300 S.W.3d 614, 619 (Mo. App. E.D. 2010).

■■■■ Ms. Bertocci essentially claimed that Defendants acted inconsistently with their right to arbitrate when they refused to negotiate in good faith by failing to make an offer to settle during mediation. Under Missouri law, a party acts in good faith when it acts without pretense, when it acts innocently and with an attitude of trust and confidence. *Monarch Fire Prot. Dist. v. Prof'l Fire Fighters of E. Mo. Local 2665*, 493 S.W.3d 916, 921 (Mo. App. E.D. 2016). A party acting in good faith acts " 'honestly, openly, sincerely, without deceit, covin, or any form of fraud.' " *Id.* (quoting *Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 367 (Mo. banc 2012)). " 'Consequently, the course of a negotiation between parties

acting in good faith should reflect that both parties sincerely undertook to reach an agreement.' " *Id.* (quoting *Ledbetter*, 387 S.W.3d at 367).

At the hearing, Defendants' corporate representative, Ms. Porter, testified that the parties participated in two mediations before Ms. Bertocci filed her lawsuit but that Defendants did not make any offers to settle. She said that Ms. Bertocci initially demanded approximately $600,000 to settle her claims and that Defendants were told if they offered less than $100,000, the negotiations were over. She further testified that it appeared that Ms. Bertocci's definition of good faith negotiation was that Defendants write her a check for $100,000. Ms. Bertocci testified that nothing prevented Defendants from offering less than $100,000 and if they had, she would have continued to negotiate. The court asked the parties' attorneys, who were part of the mediations, for clarification on those proceedings. Defendants' attorney stated that Ms. Bertocci demanded $650,000 and that mediation would not continue unless Defendants offered at least $100,000. He said Defendants went to both mediation sessions wanting to settle the case but "hit a brick wall." Ms. Bertocci's attorney said that Ms. Bertocci never required a specific offer and that if the mediator told Defendants that, it was not at Ms. Bertocci's direction.

The undisputed evidence showed that Defendants participated in two mediations and wanted to settle the case. It also showed that Ms. Bertocci initially demanded between $600,000 and $650,000 to settle her claims. Whether there was a $100,000 baseline set by Ms. Bertocci or the mediator, it cannot be said Defendants acted untruthfully, insincerely, or with deceit in failing to make an offer in the negotiations under these circumstances. Ms. Bertocci, therefore, failed to show that Defendants

waived their right to arbitrate by failing to negotiate in good faith.

### Right to Jury Trial

In her last claimed defense, Ms. Bertocci asserted that the arbitration agreement violated her right to a trial by jury. The right to a jury trial is constitutionally guaranteed. *Malan Realty Inv'rs, Inc. v. Harris*, 953 S.W.2d 624, 625 (Mo. banc 1997)(citing Mo. CONST. art. I, § 22(a)). The right to a civil jury trial, however, is a personal right and may be waived. *Id.* In an arbitration agreement, the parties not only agree to waive a jury trial but also to give up their right to present their claim to any judicial tribunal. *Id.* at 626. To protect against overreaching and inequitable bargaining positions, the validity of a waiver of the right to a jury trial depends on whether the party knowingly and voluntarily consented to relinquish the right. *Id.* at 627. "To effectively waive a jury trial by contract, clear, unambiguous, unmistakable, and conspicuous language is required." *Id.* Contractual waiver of the right to a jury trial "will never be implied but must be clearly and explicitly stated." *Id.*

Ms. Bertocci summarily argued that for all of the reasons stated in her other defenses, she did not knowingly and voluntarily waive her right to a jury trial. All of Ms. Bertocci's defenses, however, have been rejected, and she failed to make any other argument that she did not knowingly and voluntarily waive her right to a jury trial. The notice of arbitration and the arbitration provision itself were "clear, unambiguous, unmistakable, and conspicuous." *Id.* The arbitration agreement did not violate Ms. Bertocci's right to a jury trial.

For all of the reasons stated, the trial court erred in denying Defendants' motion to stay and compel arbitration. The order of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

All concur.